590 S.W.2d 946 (1979)
T. P. S., Appellant,
v.
STATE of Texas, Appellee.
No. 20113.
Court of Civil Appeals of Texas, Dallas.
November 9, 1979.
Rehearing Denied December 12, 1979.
*947 Robert A. Flynn, Robert N. Udashen, Crowder & Mattox, Dallas, for appellant.
Henry M. Wade, Dist. Atty., Maridell Templeton, Asst. Dist. Atty., Dallas, for appellee.
Before GUITTARD, C. J., and CARVER and HUMPHREYS, JJ.
GUITTARD, Chief Justice.
A fifteen-year old boy brings this appeal from an order of the juvenile court transferring him to a felony court for trial on a charge of murder. His principal complaint is that the trial court denied him a hearing on his application for temporary hospitalization under section 55.02 of the Texas Family Code.[1] We hold that he was entitled to such a hearing, and we remand for further proceedings in the juvenile court. In view of such further proceedings, we hold also that section 54.02(f) of the Code, which enumerates the factors to be considered by *948 the juvenile judge in exercising his discretion in making the transfer, is not void for vagueness, and that no prejudice is shown from the court's quashing a notice to take the deposition of one of the investigating officers.

1. Temporary Hospitalization

a. Applicability of Section 55.02 to Discretionary Transfers
Appellant's request for temporary hospitalization was based on subdivision (a) of section 55.02, which provides:
If it appears to the juvenile court, on suggestion of a party or on the court's own notice, that a child alleged by petition or found to have engaged in delinquent conduct or conduct indicating a need for supervision may be mentally ill, the court shall initiate proceedings to order temporary hospitalization of the child for observation and treatment.
The state contends that this section does not apply when the petition seeks a transfer rather than a delinquency adjudication because the child is not "alleged by the petition... to have engaged in delinquent conduct" within section 55.02(a). We do not agree. The allegations of the petition fall within the statutory definition of "delinquent conduct." Section 51.03 of the Code defines this term to include, among other conduct, violation of "a penal law of this state punishable by imprisonment." The petition alleges that appellant intentionally and knowingly caused the death of an individual by beating him with a club "in violation of a penal law of this state punishable by imprisonment." Consequently, it is clear that the petition alleges that appellant has "engaged in delinquent conduct."
Moreover, as we read the Code, the prosecuting attorney is required to allege that the child has "engaged in delinquent conduct" as a basis for transfer to a criminal court. Transfer proceedings are governed by section 54.02 of the Code. The only provision in section 54.02 concerning the contents of the petition is subdivision (b), which provides: "The petition and notice requirements of Sections 53.04, 53.05, 53.06, and 53.07 of this code must be satisfied." Of the sections specified, the only one pertaining to the contents of the petition is section 53.04, which contains the following:
(a) If the preliminary investigation, required by Section 53.01 of this code results in a determination that further proceedings are authorized and warranted, a petition for an adjudication or transfer hearing of a child alleged to have engaged in delinquent conduct or conduct indicating a need for supervision may be made as promptly as practicable by a prosecuting attorney who has knowledge of the facts alleged or is informed and believes that they are true. [Emphasis added].
Construed together, as they must be, section 54.02(b) and 53.04(a) require that a petition for transfer allege that the child has "engaged in delinquent conduct." We recognize that section 53.04(a) adds "or conduct indicating a need for supervision," and by the terms of section 54.02(a), a transfer is authorized only if "the child is alleged to have violated a penal law of the grade of felony." Nevertheless, section 53.04 clearly applies both to petitions seeking transfer and to petitions seeking delinquency adjudication. The broad term "delinquent conduct or conduct indicating a need for supervision" defines the whole range of conduct subject to the jurisdiction of the juvenile court, and section 54.02, when taken in connection with section 53.04(a), requires that a petition for transfer must allege a case within the jurisdiction of the juvenile court. Of course, some types of conduct included in section 53.04(a), may not be made the basis for a transfer.
In view of the specific reference to section 53.04 in section 54.02(b), we cannot agree with the state's counsel that the "transfer" mentioned in section 53.04(a) means a transfer of the proceedings to another county under the provisions of section 51.07. Section 51.07 authorizes transfer of the proceedings to another county only in the case of a child who "has been found to have engaged in delinquent conduct or conduct *949 indicating a need for supervision under section 54.03 of this code." We find no authority for transfer to another county before an adjudication of delinquency under section 54.03. Consequently, the "petition for an adjudication or transfer hearing," required by section 53.04(a) as the first step in a judicial proceeding before the juvenile court, must necessarily refer to a discretionary transfer to a criminal court under section 54.02.
In explaining his ruling, the juvenile judge expressed the view that when transfer to a criminal court is sought, section 55.02(a) does not apply unless there has been a previous finding that the child "as a result of mental disease or defect lacks capacity to understand the proceedings in juvenile court or to assist in his own defense" within section 55.04(a) of the Code. In this connection, the judge referred to section 55.04(f), which provides:
If the court or jury determines that the child is unfit to proceed, the court or jury shall determine whether the child should be committed for a period of temporary hospitalization for observation and treatment in accordance with Section 55.02 of this code ....
We read section 55.04 to mean that whether the petition seeks discretionary transfer or delinquency adjudication and disposition, if any party raises the question of the child's fitness to proceed, the juvenile court must hear evidence and determine the question of fitness, and, if it finds the child unfit, it shall then determine whether the child should be committed for temporary hospitalization under section 55.02. A finding of unfitness, however, is not the only situation in which the court is required to initiate proceedings for temporary hospitalization under section 55.02. Nothing in section 55.02, or elsewhere in the Code, limits its application to this situation. The only prerequisite for such proceedings in section 55.02 is that it "appears to the juvenile court ... that a child alleged by petition or found to have engaged in delinquent conduct ... may be mentally ill."
The state contends that a child charged with a felony should not be permitted to use section 55.02 as a stratagem to develop a mental illness defense to be raised at the transfer hearing as well as later in a criminal prosecution. It insists that when the prosecuting attorney has exercised his prosecutorial discretion to seek a transfer to a criminal court, the juvenile court's inquiry into the child's mental health is limited to his fitness to proceed with the transfer hearing under section 55.04. Consequently, the state argues, if the court finds him fit to proceed, it cannot properly order his hospitalization for an indefinite period to determine whether he has a mental disease or defect that would exclude criminal responsibility and permit him to raise that defense at the transfer hearing as well as later in the criminal proceedings.
Whatever basis this argument may have in considerations of policy, we find no support for it in the Code. We recognize that the guilt of the child is not the issue in a transfer proceeding. Nevertheless, a report concerning the child's mental condition after a period of hospital observation and treatment should be considered by the juvenile court in exercising its discretion to order a transfer in view of subdivision (f)(6), which requires the court to consider "the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court." Such a report would also be pertinent under subdivision (d) of section 54.02, which requires the court to "order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense." Obviously, if it should appear to the court that the child "may be mentally ill," the Code does not contemplate that the investigation should be considered full, or the diagnostic study complete until proceedings should be initiated and completed to determine the child's need for temporary hospitalization for observation and treatment, and if such need should be found, until a sufficient *950 period has elapsed for a report of such observation. Moreover, the Code is concerned at this stage of the proceedings with immediate treatment of any mental illness that may be discovered. Consequently, we conclude that the legislative intent is clear to require proceedings to determine the need for temporary hospitalization whenever it appears to the juvenile court that the child may be mentally ill, even though the child is competent to understand the consequences of his acts and to aid in his defense, and regardless of whether the petition seeks a delinquency adjudication or a discretionary transfer to a criminal court.
Appellant contends alternatively that if temporary hospitalization is not available when the prosecuting attorney seeks a discretionary transfer, then the child is denied equal protection of the laws because this construction would result in an invidious discrimination, without the justification of a compelling state interest, between juveniles who are respondents to a petition for discretionary transfer and those in like circumstances with respect to whom a delinquency adjudication is sought. We do not find it necessary to pass on this question in view of our interpretation above stated that proceedings for temporary hospitalization are available under section 55.02, whether the petition seeks a delinquency adjudication or a discretionary transfer.
We recognize that the state's construction of the Code is supported by R. K. A. v. State, 553 S.W.2d 781 (Tex.Civ.App.Fort Worth 1977, no writ). There the court said that section 55.02 (concerning temporary hospitalization) and section 55.05 (mental disease excluding responsibility) apply "only in the event the child is to be tried as a juvenile on the issue of delinquent conduct or need for supervision." The court went on to say, "If he is certified to stand trial as an adult, then his sanity will be measured by the more onerous adult standards than by those applicable to juveniles." Id. at 782. The difficulty with this interpretation is that it deprives the child of the provisions of the Code with respect to temporary hospitalization even before the court determines whether he is to be tried as an adult rather than as a juvenile. We find nothing in the Code indicating that the child's status as a juvenile is changed by the filing of a petition seeking a discretionary transfer before the juvenile court has an opportunity to exercise the discretion provided by section 54.02.
Although in R.K.A. the court states that its construction of section 55.02 and 55.05 is based on "a careful reading" of these statutes, it does not specify the particular provisions of those sections which lead it to that interpretation, nor does it refer to the provisions of sections 51.03, 53.04, and 54.02 which lead us to the opposite interpretation. Consequently, we respectfully decline to follow that case.

b. Denial of Hearing for Temporary Hospitalization
Having decided that section 55.02 is applicable whether or not the prosecuting attorney seeks a discretionary transfer, we must determine whether the juvenile court erred in this case in refusing to initiate proceedings to order temporary hospitalization. The procedure for the ordering of such temporary hospitalization is prescribed by section 55.02(b) of the Code, as follows:
The Texas Mental Health Code (5547-1 et seq., Vernon's Texas Civil Statutes) governs proceedings for temporary hospitalization except that the juvenile court shall conduct the proceedings whether or not the juvenile court is also a county court.
Subdivision (c) provides that if the juvenile court orders temporary hospitalization, the child shall be cared for, treated, and released in accordance with the Mental Health Code, except that the head of the mental hospital must notify the juvenile court ten days before discharge. Subdivision (d) provides:
If the juvenile court orders temporary hospitalization of a child, the proceedings under this title then pending in juvenile court shall be stayed.
The record in this case shows that no hearing under section 55.02 was ever held in *951 this case. Appellant's counsel first filed a "motion for medical and psychiatric inquiry," praying that the court should postpone the transfer hearing until an appropriate medical and psychiatric inquiry should be made into appellant's condition, under authority of this court's decision in In re A______ N______ M______, 542 S.W.2d 916 (Tex.Civ.App.Dallas 1976, no writ). (The case cited deals with the question of responsibility as a result of mental disease or defect under section 55.05). At a hearing on this motion on February 1, 1979, the court heard testimony from Dr. Maurice Green, a psychiatrist. Dr. Green testified that appellant could understand the nature and consequences of his acts and could assist the attorney in his defense if he wished, but that there was "a significant probability that he had a serious underlying psychiatric disorder or disease, so that he might be mentally responsible at one time but not at another." Dr. Green stated that appellant, when under stress, exhibited schizophrenic tendencies and indications of petit mal or psychomotor epilepsy, and that an extended period of observation in a mental illness facility and various tests would be necessary to "rule out" mental illness.
Also before the court at this hearing were a written report from Dr. Green and a diagnostic report signed by Dr. Sandra Mims and Dr. Saleem Ateek, staff psychologists, to whom appellant had been referred by the probation officer. Dr. Mims and Dr. Ateek stated that in the absence of unusual stress, appellant was able to think and interact in an appropriate manner, but that "under even minimal stress and when placed in an emotionally-charged situation, he shows the capacity to rapidly deteriorate in his ability to accurately interpret the situation and respond in an appropriately modulated fashion."
At the conclusion of this hearing, there was a discussion about the application of section 55.05(b) of the Code, concerning lack of responsibility as a result of mental disease or defect, and also section 55.04, concerning mental disease or defect excluding fitness to proceed. The judge stated that he would order an examination by an independent psychiatrist and would recess the hearing until a later date. The judge observed that he had no authority to commit appellant to a state mental illness hospital without a "full-blown mental illness hearing," and that the hospitals would accept him only under the Mental Illness Act, but that the court could not address the Mental Illness Act until it could determine whether appellant was capable of proceeding.
Before the next hearing, appellant's counsel filed a "motion for temporary hospitalization and observation," specifically invoking the provisions of article 55.02. This motion cites the report and testimony of Dr. Green and also the report of Dr. Blaine McLaughlin, the psychiatrist appointed by the court. Dr. McLaughlin's report states that appellant is competent to stand trial, but that he is "seriously emotionally ill and deserves and needs inpatient psychiatric care in the future."
After appellant's "motion for temporary hospitalization and observation" was filed, several hearings were held, but no further evidence was presented. On March 7 there was a discussion between the judge and counsel concerning the availability of hospital treatment, which ended with a statement by the judge that he would not release appellant for voluntary hospitalization and that the only other way was "to have this hearing and order him there in accordance with the statute."
At another hearing on March 21, appellant's counsel represented to the court that he had "two M. D. psychiatrists who will testify that temporary hospitalization is what they need to offer a firm opinion," and that it was necessary to develop the evidence of sophistication and maturity to be presented at the hearing for discretionary transfer. Counsel stated that he did not think he could show that appellant was incompetent to proceed, but could show by the doctors' testimony that he was mentally ill and required hospitalization.
After considerable discussion, the judge ruled that the only matter to be tried in advance of the transfer hearing was the *952 matter of appellant's fitness to proceed under section 55.04, and that there was no statutory basis on which appellant was permitted to present the issue of temporary hospitalization. Accordingly, the court denied the right to present any further evidence on that issue and noted the appellant's exception. The court then set the matter down for hearing on the matter of discretionary transfer, and, after hearing evidence, signed the order waiving jurisdiction of the juvenile court and transferring appellant to a district court for trial on the charge of murder.
This record does not present a case in which the juvenile court initiated proceedings for temporary hospitalization and then, on the basis of evidence presented at a hearing held in accordance with section 55.02, decided that temporary hospitalization was not appropriate. The record shows rather that after a hearing on the issue of mental disease or defect excluding responsibility under section 55.05, appellant withdrew his motion for a psychiatric inquiry under that section and requested a hearing on the issue of temporary hospitalization under section 55.02, which the court denied because of its interpretation of the Code. Because of that interpretation, which we now find erroneous, the court never held the hearing requested and made no determination of whether appellant was in need of temporary hospitalization for observation and treatment.
The state contends that appellant is not entitled to temporary hospitalization because he has not made a proper application for voluntary hospitalization under section 22 of the Mental Health Code, Tex.Rev. Civ.Stat.Ann. art. 5547-22 (Vernon 1958), and neither has he made a proper application for involuntary temporary hospitalization under sections 31 and 32 of the Mental Health Code, Tex.Rev.Civ.Stat.Ann. arts. 5547-31, 5547-32 (Vernon 1958). Although section 55.02(b) of the Family Code provides that the Mental Health Code governs proceedings for temporary hospitalization, we conclude that the formal requirements of the Mental Health Code concerning the institution of proceedings for temporary hospitalization do not apply to a case falling within section 55.02 of the Family Code. On the contrary, subdivision (a) of section 55.02 imposes on the juvenile court the duty to initiate proceedings for temporary hospitalization "[i]f it appears to the juvenile court, on suggestion of a party or on the court's own notice, that a child alleged by petition ... to have engaged in delinquent conduct ... may be mentally ill." We consider the unsworn "motion for temporary hospitalization and observation" filed in the present case a "suggestion" sufficient to invoke the court's duty to "initiate proceedings to order temporary hospitalization," provided that the information before the court was sufficient to show that the child "may be mentally ill."
We must determine, therefore, whether the information before the court was sufficient to require the court to institute proceedings for such temporary hospitalization. We hold that it was sufficient to require such proceedings. The court had before it the testimony of Dr. Green at the earlier hearing and the written reports of Dr. Green, Dr. Mims, Dr. Ateek, and Dr. McLaughlin, all qualified experts, who stated that there was a strong possibility of a serious psychiatric or emotional disorder requiring further observation and treatment. This information was sufficient to show to the juvenile court that appellant "may be mentally ill," in the sense of a reasonable possibility that such hospitalization was needed. This is the same standard as that requiring an inquiry into the child's responsibility under section 55.05(b), which has been held to require the court to hear evidence. In re A______ N______ M______, 542 S.W.2d 916, 918 (Tex.Civ.App.Dallas 1976, no writ). Consequently, we must remand the case to the juvenile court with instructions to initiate proceedings for temporary hospitalization under section 55.02. We do not hold that the information before the court was sufficient to require such hospitalization, but only that it required a hearing on that issue under section 55.02 *953 and the applicable provisions of the Mental Health Codethe "full blown mental illness hearing," which the juvenile court denied.
Accordingly, we reverse the transfer order and remand the case to the juvenile court for further proceedings. We comment briefly on other questions raised on this appeal which may be pertinent to those proceedings.

2. Vagueness of Factors Affecting Transfer
Appellant further complains of the order of transfer on the ground that section 54.02 of the Code, which undertakes to define the circumstances authorizing discretionary transfer, is so vague as to give the juvenile judge almost total discretion, and therefore denies due process. Appellant points out that the "welfare of the community," which the court is required to determine by subdivision (a)(3), is incapable of precise definition and may be many things to many people. Moreover, appellant attacks as impermissibly vague the various factors which the court is required to consider by subdivision (f):
(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;
(2) whether the alleged offense was committed in an aggressive and premeditated manner;
(3) whether there is evidence on which a grand jury may be expected to return an indictment;
(4) the sophistication and maturity of the child;
(5) the record and previous history of the child; and
(6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.
This statute has been upheld as constitutional in a number of opinions that do not specify the grounds of the attack. See S C B v. State, 578 S.W.2d 833, 836 (Tex.Civ. App.Houston [1st Dist.] 1979, writ ref'd n. r. e.); In re P. A. C., 562 S.W.2d 913, 917 (Tex.Civ.App.Amarillo 1978, no writ); In re P. B. C., 538 S.W.2d 448 (Tex.Civ.App. El Paso 1976, no writ). In our opinion, it is not so uncertain as to render its enforcement impracticable or impossible. It does not allow the juvenile judge unlimited discretion, since subdivision (h) of article 54.02 requires the court to "state specifically" in its order the reasons for the transfer. The court need not find that all the factors specified in subdivision (f) have been established, but it must consider all these factors and state its reasons for the transfer so that the appellate court may review the basis on which the conclusion was made and can determine whether the evidence so considered does in fact justify that conclusion. In the Matter of J. R. C., 551 S.W.2d 748, 753 (Tex.Civ.App.Texarkana 1977, writ ref'd n. r. e.); In re J. R. C., 522 S.W.2d 579, 583 (Tex.Civ.App.Texarkana 1975, writ ref'd n. r. e.).
Appellant, in effect, attacks the basic concept of a discretionary transfer in that he argues that the circumstances authorizing a transfer must be defined by the statute with the same certainty as that necessary to define a penal offense so that the child, when he engages in the conduct complained of, may be presumed to know, not only that he is committing an offense, but also that if charged with such conduct, he will be tried as an adult. We do not agree that due process requires the factors affecting the transfer to be defined with the same certainty as that required to define an offense. For due process it is enough that the conduct be defined as criminal so as to subject the offender either to the processes of juvenile justice or to trial and punishment as an adult.
This conclusion is consistent with the holding in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), which holds that due process requires a notice and hearing before any determination that a juvenile offender should be tried as an adult. Kent does not hold that the *954 juvenile court must not be given discretionary power to make this determination. On the contrary, the opinion recognizes that the statute of the District of Columbia there in question gave the juvenile court "a substantial degree of discretion as to the factual considerations to be evaluated, the weight to be given them and the conclusion to be reached." The statute in question authorized a transfer in the discretion of the juvenile court without specifying the factors to be considered, unlike section 54.02 of the Texas Code, which does specify such factors. Nevertheless, the Supreme Court held that the District of Columbia statute "does not confer upon the Juvenile Court a license for arbitrary procedure." Accordingly, the court remanded the cause for further proceedings under that statute. In the light of that decision, we find no denial of due process in section 54.02. Therefore, for the reasons previously stated, we remand the present case for further proceedings in accordance with that section and other relevant provisions of the Texas Code.

3. Denial of Discovery
Finally, appellant complains that the juvenile court acted arbitrarily in quashing his notice to take the deposition of Sergeant Gus Rose, an investigating officer who later became a witness for the State at the transfer hearing. Counsel contends that if he had been permitted to take this deposition, new evidentiary leads might have been developed that would have assisted him in preparing for the transfer hearing and might have resulted in a different judgment. Counsel also argues that a deposition would have allowed for more effective cross-examination of Sergeant Rose.
Although section 51.17 of the Code provides that the Texas Rules of Civil Procedure govern proceedings involving delinquent children and children in need of supervision, it is doubtful whether all the discovery procedures available under the Rules are applicable. Although we find no Texas authority on this question, courts in other jurisdictions have held that the trial judge may restrict the scope of discovery more in a juvenile case than in other civil cases. Joe Z. v. The Superior Court of Los Angeles County, 3 Cal.3d 797, 91 Cal.Rptr. 594, 478 P.2d 26 (1970); Hanrahan v. Felt, 48 Ill.2d 171, 269 N.E.2d 1 (1971). In the present case, Sergeant Rose testified fully at the transfer hearing, and appellant has not undertaken to demonstrate any particular in which he was surprised by the testimony or otherwise prejudiced by lack of opportunity to take the deposition. Consequently, we hold that appellant has failed to show reversible error in this respect.

Judgment
We conclude that the issue of temporary hospitalization is separable from the issues at the transfer hearing without unfairness to the parties. Accordingly, under the provisions of Rule 434, Texas Rules of Civil Procedure, we reverse the order of transfer and remand the case with instructions to initiate proceedings for temporary hospitalization under section 55.02 of the Family Code and in accordance with the applicable provisions of the Mental Health Code. If after such proceedings the court determines that temporary hospitalization for observation and treatment is required, the court will order such temporary hospitalization and will suspend proceedings for transfer, as required by section 55.02(d), and, after receiving a report of such temporary hospitalization, will hold a new hearing on the issue of discretionary transfer. On the other hand, if the court determines that such temporary hospitalization is not required, then, without further hearing, the court will transfer appellant to a criminal court for trial in accordance with section 54.02.
Reversed and remanded with instructions.
NOTES
[1] All references are to Tex.Fam.Code Ann. (Vernon 1975), unless otherwise indicated.