605 S.W.2d 643 (1980)
In the Matter of V.C.H.
No. 17630.
Court of Civil Appeals of Texas, Houston (1st Dist.).
July 17, 1980.
*644 Cole, Panzica & Vestal, Frank V. Panzica, Houston, for appellant.
James C. Brough, Houston, for appellee.
Before PEDEN, EVANS and WALLACE, JJ.
PEDEN, Justice.
V.C.H., a minor, appeals from an order of a family district court, sitting as a juvenile court (hereinafter called juvenile court), waiving its exclusive jurisdiction and transferring appellant to the criminal district court to stand trial for murder as an adult. He asserts that the juvenile court: 1) erred in overruling his motion for a separate jury trial on the issue of his fitness to proceed with the transfer hearing, 2) erred in overruling his motion for commitment to a hospital for psychiatric testing, 3) erred in allowing in evidence certain psychiatric reports which appellant claims were not timely filed with the court, 4) had no jurisdiction over the matter because it failed to get personal service on appellant's mother before appellant's seventeenth birthday, and 5) abused its discretion in determining that appellant possessed the sophistication and maturity to be tried as an adult.
Appellee, the State of Texas, contends not only that none of the actions complained of constitutes reversible error, but also that this appeal is moot because a transfer order signed six months prior to the order now attacked is valid and will stand regardless of the action taken by this court in the present suit.
We agree that the appellant was entitled to a jury trial on the fitness issue, and we reverse and remand.
Appellant was arrested in January of 1979. The state first filed a petition to have him adjudged a child who has engaged in delinquent conduct, but no hearing was held before the state filed an amended petition asking that jurisdiction of the juvenile court be waived. A second amended petition was filed, correcting the spelling of the name of the alleged murder victim, and citations were issued to appellant and to his foster father to appear at a transfer hearing in April. No citation was issued to appellant's natural parents; his father had been killed several years earlier and his mother had given him to the foster father when appellant was only two days old. After a hearing on the state's petition, the juvenile court granted the petition and entered an order waiving jurisdiction and transferring the proceedings to a criminal district court.
When appellant's case was called in the criminal district court in August, he entered a special plea in bar, alleging that the transfer order was void because of the lack of service on his mother in the juvenile court. The criminal district court entered an agreed order stating that it did not have jurisdiction over the appellant and ordering the indictments dismissed. The state then filed a third amended petition in the juvenile court, again requesting that the court waived its jurisdiction and transfer the proceedings to the criminal district court. This time citations were served on the appellant, *645 his foster father, and his natural mother. The second transfer hearing was set for October 15.
On August 8, the state requested an order for "a complete psychiatric examination of [the appellant] including examinations to determine sanity and competency and fitness to proceed to trial and ability to assist counsel." The request was granted, and the juvenile curt ordered that the appellant be transferred to a hospital until the examination was completed and that a copy of the examination report be filed by October 8. In addition, the court ordered the probation office to make a "complete diagnostic study, social evaluation and a full investigation" of the appellant, his circumstances, and the circumstances of the alleged offense.
Prior to the second transfer hearing, appellant's counsel filed motions for a court appointed psychiatrist, for a private psychiatric evaluation, for a separate jury trial to determine the appellant's competency to stand trial, and for commitment to a mental hospital for psychiatric testing. At a hearing on September 17 on these motions, the juvenile court allowed filing of a report from a psychiatrist appointed by the criminal district court at appellant's request. The second motion was granted, and appellant's counsel stated that he would pursue the third and fourth motions later.
A second motions hearing was held on October 9, at which time appellant's counsel withdrew the motion for commitment to a hospital for testing. The motion for a separate hearing on the competency issue was re-urged and a new motion submitted which requested that the court:
... initiate an examination into the physical, psychiatric and psychological condition of this Defendant and to follow the general guidelines of Chapter 55 of the Texas Family Code including the impaneling of a separate jury to try the issue of the Defendant's responsibility for his acts and his present competency to stand trial prior to trial on the charges herein.
In addition, appellant's counsel moved to dismiss for lack of jurisdiction, citing the state's failure to obtain service on appellant's mother before his seventeenth birthday.
On October 15, the court denied as moot the motions for private psychiatric evaluation, appointment of a psychiatrist, and commitment to a hospital for testing, the court having already on file numerous psychiatric reports. The judge denied two motions requesting a separate hearing on the appellant's mental state, saying that the issues could be determined at the transfer hearing without a separate proceeding. The motion to dismiss was denied as premature.
The judge then stated his intention "to first respond and determine the fitness to proceed" of the appellant and then to "proceed routinely in the full certification proceeding." Immediately thereafter, the first witness was called, and the transfer hearing was begun without a jury. At the close of all evidence and arguments, the court ordered that its jurisdiction be waived and the appellant transferred to the criminal district court to stand trial as an adult.
The appellant's first two points are that the juvenile court erred in denying his request 1) for trial on the issue of his fitness to proceed prior to conducting his transfer hearing and 2) for a jury trial on the issue of fitness to proceed. In support of his claims he cites Section 55.04 of the Family Code, which provides, in pertinent part:
(a) No child who as a result of mental disease or defect lacks capacity to understand the proceedings in juvenile court or to assist in his own defense shall be subjected to discretionary transfer to criminal court, adjudication, disposition, or modification of disposition as long as such incapacity endures.
(b) If it appears to the juvenile court, on suggestion of a party or on the court's own notice, that a child alleged or found to have engaged in delinquent conduct or conduct indicating a need for supervision may be unfit to proceed, the court shall order appropriate medical and psychiatric *646 inquiry to assist in determining whether the child is unfit to proceed because of mental disease or defect.
(c) The court or jury shall determine from the psychiatric and other evidence at a hearing separate from, but conducted in accordance with the requirements for, the adjudication hearing whether the child is fit or unfit to proceed.
(d) Unfitness to proceed must be proved by a preponderance of the evidence.
(e) If the court or jury determines that the child is fit to proceed, the juvenile court shall continue with proceedings under this title as though no question of fitness to proceed had been raised.
(f) ...
(g) ...
(h) ...
The state does not contend that Section 55.04 is inapplicable to transfer proceedings but maintains that its subsection (c) does not require that the hearing on fitness be conducted prior to the transfer hearing, since the transfer hearing is not an adjudication hearing. The state also argues that since the transfer hearing must necessarily take place before the adjudication on the merits, it is consistent with the statute to conduct the fitness hearing along with the transfer hearing.
The reported cases construing the Code provisions on mental capacity have not ruled on the question of whether the fitness hearing must be conducted prior to the transfer hearing. T.P.S. v. State, 590 S.W.2d 946 (Tex.Civ.App.1979, writ ref. n. r. e.), states only that "the juvenile court must hear evidence and determine the question of fitness." 590 S.W.2d at 949. It does not indicate whether this evidence must be heard at a hearing separate from and prior to the transfer hearing. On the other hand, in dictum, the court in R.K.A. v. State, 553 S.W.2d 781, 782 (Tex.Civ.App.1977, no writ), said that determination of the fitness question "must be made separate from, and prior to transfer to criminal court or adjudication." (emphasis added)
As to Section 55.04, it is stated in the Commentary on the Texas Family Code, 5 Tex.Tech.L.R. 269 at 578: "Subsection (c) permits the determination of mental fitness to proceed to be made by a judge or jury in a hearing that complies with the requirements of the adjudication hearing." (emphasis added). Subsection (c) of Section 55.04 does not specifically require that the fitness hearing be conducted separate from the transfer hearing, but we conclude from the wording of subsections (c) and (e) that the Legislature intended that a jury trial be made available to the child on the fitness issue.
It appears that V.C.H. timely requested a jury trial on the fitness issue and that the trial court erred in denying his request. Under these circumstances we consider it preferable to conduct the hearings separately. We sustain the appellant's second point.
The state contends in its first counterpoint that the April order of waiver and transfer was valid, that the second transfer hearing was therefore unnecessary, and that this appeal is moot.
It is true that there is no indication that an appeal was ever taken from the first transfer order or that the juvenile court ever vacated its order. Further, the criminal district court's agreed order finding that it had no jurisdiction does not purport to reverse the first transfer order, and even if it had, it would have lacked jurisdiction to do so. Section 56.01 of the Family Code expressly vests jurisdiction over appeals from orders of the juvenile court in the Courts of Civil Appeals.
We accept as correct the statement in the appellant's original brief explaining the basis for the criminal district court's order; he said that opposing counsel agreed that the case should be remanded to the juvenile court for a second transfer hearing "to perfect service on appellant's natural mother who had never been notified of the Discretionary Transfer Hearing and who was not present." Appellant contends that this lack of service on her was a fatal defect, citing Section 53.06 of the Family Code, which provides, in pertinent part:

*647 (a) The juvenile court shall direct issuance of a summons to:
(1) the child named in the petition;
(2) the child's parent, guardian, or custodian;
(3) the child's guardian and litem; and
(4) any other person who appears to the court to be a proper or necessary party to the proceeding.
A child's custodian is defined by Section 51.02 of the Family Code as "the adult with whom the child resides." It is undisputed that under this definition the appellant's foster father was his custodian and that the foster father was served and appeared at the first hearing. As subsection (a)(2) is clearly worded in the alternative, we consider that service on the custodian and the parent is not required. Moreover, there is nothing in the record to reflect that any party alleged or that the trial court determined that appellant's mother was "a proper or necessary party" to be served under subsection (a)(4). Thus, we conclude that failure to serve appellant's mother did not invalidate the first transfer order. In any event, the validity of the first transfer order cannot be attacked in this proceeding, no timely appeal having been perfected.
We hold, however, that when the judge of the criminal district court signed the agreed order that the plea in bar be granted, that both indictments against the defendant be dismissed, and that the defendant be released by the sheriff to the custody of the director of the juvenile detention home, the effect of his order was to end prosecution in the criminal district court and to remand the child to the jurisdiction of the juvenile court. Subsection (h) of Section 54.02 provides that the court to which the case was transferred "may remand the child to the jurisdiction of the juvenile court." We do not agree that this order left intact the first transfer order, thus making this appeal moot, and we overrule this counterpoint.
The state contends that even if the trial court erred in failing to conduct the fitness hearing separate from the transfer hearing, the error was harmless and could not have changed the outcome, citing Meza v. State, 543 S.W.2d 189 (Tex.Civ.App.1976, no writ). The appellate court there noted that the trial court had erred in overruling the child's Section 55.04 motion asking the court to order a medical and psychiatric inquiry to assist in determining whether he was suffering from a mental illness or defect, but it held that the error was harmless. In that case there was no evidence tending to show that Meza was mentally ill, whereas in our case a fact issue was raised on that question.
In the alternative, the state contends that even if the trial court's failure to hold a separate hearing on the fitness issue was error, and even if the error was not harmless, there is nevertheless no need to reverse the judgment. It suggests that the proper procedure would be to instruct the trial court to hold a new hearing to determine retrospectively the appellant's fitness to proceed at the time of the October transfer hearing. Support for this proposition can be found in Callaway v. State, 594 S.W.2d 440 (Tex.Cr.App.1980), and Caballero v. State, 587 S.W.2d 741 (Tex.Cr.App.1979), which hold that retrospective determination of competency to stand trial is consistent with due process.
We find little guidance in the Family Code or in the cases construing it, but in view of the difficulty of retrospectively determining an accused's competency to stand trial, we think the fairer and better practice would be to reverse the judgment of that trial court and order a jury hearing on whether V.C.H. is presently fit to proceed to trial, and if so, a new transfer hearing This practice has been adopted by the Courts of Civil Appeals in juvenile cases, see T.P.S. v. State, supra; Dominguez v. State, 546 S.W.2d 398 (Tex.Civ.App.1977, no writ); In the Matter of A___ N___ M%y(4)d, 542 S.W.2d 916 (Tex.Civ.App.1976, no writ), and by the U.S. Supreme Court in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) and in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).
*648 We have examined the appellant's other points of error. We find no reversible error shown in any of them, but our ruling on his first two points makes it unnecessary to discuss them in detail.
The transfer order of October 18, 1979, is reversed and this cause is remanded to the family district court of Harris County for a jury hearing on the issue of whether V.C.H. is at present fit to proceed to trial, and if so, for a new transfer hearing.