David Vance LUDWIG, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–81–168–CR.

Court of Appeals of Texas, Waco.

July 29, 1982.

Rehearing Denied Aug. 19, 1982.

Stuart F. Lewis, Lewis & Lewis, Bryan, for appellant.

Travis B. Bryan, III, Dist. Atty., Carolyn L. Ruffino, Asst. Dist. Atty., Bryan, for appellee.

HALL, Justice.

This is an appeal from a conviction for robbery to which appellant pleaded no contest, and punishment was assessed by a jury at imprisonment for five years. At the time of the offense appellant was fifteen years of age but jurisdiction was waived by the juvenile court and appellant was tried in the district court.

The evidence showed that appellant gained entry to the victim's home on the pretext of using the phone. He then held a pistol on the victim which he had carried to her house and ordered her to lay on the couch so he could tie her up. The victim, a third grade school teacher by profession, tried to calm appellant down by talking to him. She explained that she didn't have much money, but that what she had was in her purse. Appellant then took money from the victim and put it in his pocket while he continued to keep the gun pointed at her. After taking the money he attempted to tie her wrist and ankles. A struggle ensued and they fell to the floor where appellant began kissing and attempt-

ing to fondle the victim while she fought to get free.

As they struggled, the victim successfully forced her finger into the trigger guard of the pistol and discharged each round until the pistol would fire no more. Appellant then began striking her on the head with the pistol, choking her and banging her head against the walls and door. After the victim managed to throw the pistol outside the house appellant fled taking the victim's money with him. Appellant later led police to where he had hidden the money in the garage of his home.

On May 2, 1980, the Brazos County Court at Law sitting as a juvenile court waived its juvenile jurisdiction and transferred the case to the 85th Judicial District Court of Brazos County for appellant to be tried as an adult. Appellant waived his rights to an examining trial and to indictment by the grand jury. Appellant was then charged on a felony information with aggravated robbery. The information charged that appellant, on or about April 2, 1980, "while in the course of committing theft and with the intent to obtain property of [the victim], to-wit: MONEY OF THE UNITED STATES, without the effective consent of said [victim] and with intent to deprive the said [victim] of said property, did then and there by using and exhibiting a deadly weapon to-wit: a pistol intentionally and knowingly placed the said [victim] in fear of imminent bodily injury." After plea negotiations the state agreed to waive the alleged aggravation element of the offense and proceed on the lesser included offense of robbery, appellant pleaded nolo contendere, and the issue of punishment was submitted to a jury. The punishment assessed was five years in the penitentiary, and the jury refused appellant's plea for probation.

Appellant in his first ground of error asserts that the juvenile court's transfer order is void because it failed to recite that the court had considered the prospects of adequate protection of the public and the likelihood of rehabilitation of appellant by the use of procedures, services, and facilities currently available to the juvenile court. Appellant argues that the court's failure to specifically state it had considered the above criteria, which is set out in V.T. C.A., Family Code § 54.02(f)(6), is a fundamental defect in the transfer order which deprived the district court of jurisdiction in this case.

It would appear under the authorities that the proper method for testing the sufficiency of the juvenile court's order would have been by direct appeal pursuant to Family Code Secs. 56.01 and 56.02, which appellant did not take, and not collaterally by this appeal from his criminal conviction. *Tatum v. State*, 534 S.W.2d 678, 680 (Tex. Cr.App.1976); *Ex parte Allen*, 618 S.W.2d 357, 358 (Tex.Cr.App.1981); *Dillard v. State*, 477 S.W.2d 547, 550 (Tex.Cr.App. 1972). Nevertheless, as the Court did in *Tatum*, we shall consider appellant's attack on the transfer order.

The pertinent parts of § 54.02 read as follows:

"(a) The juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was 15 years of age or older at the time he is alleged to have committed the offense and no adjudication hearing has been conducted concerning that offense; and

(3) after full investigation and hearing the juvenile court determines that because of the seriousness of the offense or the background of the child the welfare of the community requires criminal proceedings.

\* \* \* \* \* \*

"(f) In making the determination required by Subsection (a) of this section, the court shall consider, among other matters:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) whether the alleged offense was committed in an aggressive and premeditated manner;

(3) whether there is evidence on which a grand jury may be expected to return an indictment;

(4) the sophistication and maturity of the child;

(5) the record and previous history of the child; and

(6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

\*   \*   \*   \*   \*   \*

"(h) If the juvenile court waives jurisdiction, it shall state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court, and transfer the child to the appropriate court for criminal proceedings. . . ."

The juvenile court's order stated:

"The Court, having heard the evidence and argument of counsel, finds that [appellant] was 15 years of age or older at the time he is alleged to have committed the offense and no adjudication hearing has been conducted concerning that offense; the alleged offense was against a person committed in an aggressive and premeditated manner; there is evidence on which a grand jury may be expected to return an indictment; and the child is sophisticated and mature enough to realize the seriousness and consequences of his act.

"It is the opinion of this Court that because of the seriousness of the offense and the background of the child the welfare of the community requires criminal proceedings.

"The Court, for the reasons herein stated, waives its exclusive original jurisdiction of the child, . . . and transfers him to the 85TH DISTRICT COURT OF BRAZOS COUNTY, TEXAS for criminal proceedings."

On this appeal appellant does not contend that the juvenile court actually failed to consider all six criteria listed in 54.02(f). Appellant attacks the sufficiency of the juvenile court's transfer order only because it fails to *state* that the court considered the specific criteria set forth in § 54.02(f)(6). No record of the juvenile court proceedings has been brought up on this appeal.

Section 54.02 requires that the juvenile court consider each of the six criteria listed in subdivision (f) when determining if the seriousness of the offense or the background of the child is such that the welfare of the community requires criminal proceedings instead of juvenile proceedings. *P. G. v. State*, 616 S.W.2d 635, 639 (Tex.Civ. App.—San Antonio 1981, writ ref'd n. r. e.); *In the Matter of G. B. B.*, 572 S.W.2d 751, 756 (Tex.Civ.App.—El Paso 1978, writ ref'd n. r. e.). However, the Family Code does not require the juvenile court to enter findings on each of the six criteria. *P. G. v. State*, supra; *T. P. S. v. State*, 590 S.W.2d 946, 953 (Tex.Civ.App.—Dallas 1979, writ ref'd n. r. e.); *In re J. R. C.*, 522 S.W.2d 579, 583 (Tex.Civ.App.—Texarkana 1975, writ ref'd n. r. e.). The Family Code simply requires that the court state its reasons for the transfer. V.T.C.A. Family Code § 54.-02(h); *T. P. S. v. State*, supra; *In the Matter of J. R. C.*, 551 S.W.2d 748, 753 (Tex.Civ.App.—Texarkana 1977, writ ref'd n. r. e.).

■ The United States Supreme Court has stated that a juvenile transfer proceeding is critically important, and a reviewing court may not, in circumstances where no hearing was held or evidence presented, and no reasons stated, assume that a "full investigation" has been made. *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). However, in our case, the transfer order was issued only after the court had held a hearing, received evidence, and heard argument of counsel. Furthermore, the order stated at least five separate reasons for the court's decision to waive jurisdiction. The record before us also shows that the juvenile court ordered a psychological evaluation of appellant and

that the evaluation was made on April 10, 1980. No appeal was taken from the juvenile court's order and it is not contended on this appeal that the juvenile court proceedings actually failed to address the questions of adequate protection of the public and the likelihood of rehabilitation of the child. The record before us shows the court held the required hearing, received evidence, and ordered appropriate psychological studies. Under these facts we must presume the juvenile court judge carried out his lawful duty of considering all the evidence before him. *I. L. v. State*, 577 S.W.2d 375, 377 (Tex.Civ.App.—Austin 1979, writ ref'd n. r. e.).

Appellant's first ground of error is overruled.

Appellant contends in his third ground of error that the evidence is insufficient to establish a robbery in that it does not show that appellant "acted while in the course of committing a theft or with the intent to obtain the property" of the victim.

The victim testified that after she had let appellant into her home to use the phone he "pulled a gun" on her and told her "to lay down on the couch," so he could tie her up. Her testimony continued as follows:

"Q. What did you do?

A. I told him, you know, I started questioning him what did he want and he told me, you know, he didn't want to shoot me but that he would and he told me to lay down on the couch and he was going to tie me up. And I said, well, if you want money, I don't have much money.

Q. Was he still pointing the gun at you?

A. Yes.

Q. What did you do?

A. I tried to talk to him and I said if you want money, I will give you my money and I gave him what little money I had in my purse.

Q. Did he take the money from you?

A. Yes.

Q. What did he do with the money?

A. He put it in his pocket.

Q. Did you give it to him voluntarily or did he take it without your consent?

A. Well, he had a gun on me.

\* \* \* \* \* \*

Q. And then what happened?

A. He tied my ankles behind me and then he said we are going to move to the couch and I just sat there.

Q. Were you petrified?

A. Yes, and then he pulled me out of the chair on the floor.

Q. Then what happened?

A. He got on top of me and started grabbing my breast and kissing me.

Q. Started fondling you then?

A. Yes.

Q. What did you do?

A. I finally got one of my hands undone that he had tied behind my back and I started trying to fight with him and he got up and pointed the gun at me and said—

Q. What did he do?

A. He said, lady, you want me to show you this gun is loaded. And I was afraid to say yes because I knew he would shoot me, . . .

\* \* \* \* \* \*

Q. What did you do?

A. And I didn't do anything then. He came at me with the gun and I grabbed the gun and we started fighting.

\* \* \* \* \* \*

Q. Can you show the jury how he was hitting you on the head?

A. Well, we were fighting. My head was down and he was hitting me with the gun any way he could grab the gun he could, he was just hitting me and slamming me—we were at this time close to a wall and he was slamming me up against the wall, also.

\* \* \* \* \* \*

Q. And you still continued to fight with him?

A. At the door and finally I got the door open just enough and I grabbed for the gun and threw it out the door before he could slam it.

* * * * * *

Q. What did he do?

A. He looked at all the blood on the floor and on me and he asked me what I was going to do about all the blood and I told him I would clean it up, just to get out and never come back and he got the door open wide enough and I shoved him and slammed the door and locked it, and that is when I called my husband and the police.

Q. Did he leave with the money?

A. Yes.

Q. Did he take this money without your consent?

A. Yes.

* * * * * *

Q. Were you afraid of his injuring or killing you?

A. Yes, very."

Additionally, Police Lieutenant Bernard Kapella testified that appellant took him into his garage and showed the lieutenant where he had hidden the money he had taken from the victim earlier that day.

■ Appellant argues that he never at any time expressly requested money from the victim and while he "may well have been acting out some adolescent sexual fantasy during these events" there is no evidence he intended to rob the victim. A verbal demand is not required to show intent to steal when such intent can be inferred from conduct and actions. *Johnson v. State*, 541 S.W.2d 185, 187 (Tex.Cr.App. 1976); *Banks v. State*, 471 S.W.2d 811, 812 (Tex.Cr.App.1971). Although appellant's conduct and actions may indicate more than one intent the evidence is sufficient for the jury to infer that appellant intended to commit the robbery. Appellant's third ground of error is overruled.

In his fourth ground of error appellant contends that the felony information under which he was tried is fundamentally defective because it alleges an offense wholly different from that over which the juvenile court waived its jurisdiction. The factual allegations in the state's petition for discretionary waiver of juvenile jurisdiction were set out in the juvenile court's transfer order. These allegations state that the appellant, on or about April 2, 1980, "while in the course of committing theft and with intent to appropriate the property of [the victim], to-wit: United States Currency, without the effective consent of the said [victim] and with intent to deprive the said [victim] of said property, did then and there by using and exhibiting a deadly weapon, to wit: a pistol intentionally, knowingly or recklessly, cause bodily injury to [the victim] by striking her on the head with the pistol."

■ Family Code, § 54.02 does not require that the transfer apprise the juvenile of the specific crimes for which he might be charged in the district courts. *Tatum v. State*, 534 S.W.2d 678, 680 (Tex.Cr.App. 1976); *Ex parte Allen*, 618 S.W.2d 357, 360–361 (Tex.Cr.App.1981). Our Court of Criminal Appeals has held that it is only required that the transfer order and subsequent prosecution flow from the same specific criminal incident or specific criminal acts. *Ex parte Allen*, supra; *Tatum v. State*, supra.

Appellant's fourth ground of error is overruled. Appellant's second and fifth grounds of error are plainly without merit and they are overruled without discussion.

The judgment is affirmed.