COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-116-CR

 

 

MAURICE FELTON LAWSON                                                  APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

          FROM COUNTY COURT AT
LAW NO. 1 OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                          I.  Introduction

In three points, Appellant Maurice Felton Lawson
appeals his conviction for violation of a permanent injunction under the Agang
injunction statute.@ 
We affirm.

                          II.  Factual and Procedural Background








On September 18, 2006, the 89th District Court of
Wichita County, Texas, issued a temporary injunction under section 125.065 of
the civil practice and remedies code.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 125.065
(Vernon 2005).  The injunction named
seventeen members of the street gang Varrio Carnales (AVC@), including
Lawson, who had allegedly engaged in criminal activity.  The State, through the injunction, sought to
prohibit the named defendants from engaging in twenty-nine activities.  Subsequently, the trial court entered an
order making the injunction permanent.

On or about February 20, 2007, Lawson violated
the trial court=s order enjoining organized
criminal activity by A[a]ssociating, standing,
sitting, walking, driving, bicycling, gathering or appearing anywhere in public
view@ with a
VC gang member who was subject to the permanent injunction.[1]  Lawson pleaded guilty, and pursuant to a plea
bargain agreement with the State, the trial court sentenced him to 300 days=
confinement and a $4,000 fine.  Lawson
now appeals.[2]

                                          III.  Discussion

In his first two points, Lawson claims that penal
code section 71.021 is facially unconstitutional; in his third point, he argues
that it is unconstitutional as applied to him.








A.  Standard of Review

We review the constitutionality of a criminal
statute de novo, as a question of law.  See
Owens v. State, 19 S.W.3d 480, 483 (Tex. App.CAmarillo
2000, no pet.); State v. Salinas, 982 S.W.2d 9, 10B11 (Tex.
App.CHouston
[1st Dist.] 1997, pet. ref=d).  When confronted with an attack upon the
constitutionality of a statute, we presume that the statute is valid and that
the legislature has not acted unreasonably or arbitrarily.  Rodriguez v. State, 93 S.W.3d 60, 69
(Tex. Crim. App. 2002); Ex parte Dave, 220 S.W.3d 154, 156 (Tex. App.CFort
Worth 2007, pet. ref=d), cert. denied, 128 S.
Ct. 628 (2007).  The burden rests upon
the individual who challenges the statute to establish its
unconstitutionality.  Rodriguez,
93 S.W.3d at 69; Dave, 220 S.W.3d at 156.  In the absence of contrary evidence, we will
presume that the legislature acted in a constitutionally sound fashion.  Rodriguez, 93 S.W.3d at 69.  The statute must be upheld if a reasonable
construction can be ascertained that will render the statute constitutional and
carry out the legislative intent.  Shaffer
v. State, 184 S.W.3d 353, 363 (Tex. App.CFort
Worth 2006, pet. ref=d); see Ely v. State, 582
S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979).








B.  Facial and As-Applied
Challenges

There are two types of challenges to the
constitutionality of a statute:  the
statute is unconstitutional as applied to the defendant, or the statute is
unconstitutional on its face.  Fluellen
v. State, 104 S.W.3d 152, 167 (Tex. App.CTexarkana
2003, no pet.).  The constitutionality of
a statute as applied must be raised in the trial court in order to preserve
error.  Curry v. State, 910 S.W.2d
490, 496 (Tex. Crim. App. 1995). 
However, a defendant may raise a constitutional challenge to the facial
validity of a statute for the first time on appeal.  Garcia v. State, 887 S.W.2d 846, 861
(Tex. Crim. App. 1994), cert. denied, 514 U.S. 1005 (1995).

1.  Facial
Constitutionality of Penal Code Section 71.021

In his first point, Lawson argues that penal code
section 71.021 is unconstitutionally vague and overbroad and therefore violates
both the United States Constitution and the Texas Constitution.  This court recently rejected an argument
identical to Lawson=s.  See Goyzueta v. State, 266 S.W.3d 126,
130B37 (Tex.
App.CFort
Worth 2008, no pet.).  Goyzueta
involved the same injunction that Lawson now challenges.  Id. at 129.  For the same reasons articulated in our
opinion in that case, we reject Lawson=s
argument and, accordingly, overrule his first point.








In Lawson=s second
point, he argues that section 71.021 is unconstitutional Aon its
face@ because
it violates the Nondelegation Doctrine.[3]  Specifically, Lawson=s chief
complaint is that section 71.021 is unconstitutional because it is Aplainly
apparent@ that it
does not belong to any of the six classifications listed by the Texas Supreme
Court in Housing Authority of City of Dallas v. Higganbotham, 135 Tex.
158, 171B72, 143
S.W.2d 79, 87 (1940).

a. 
Nondelegation Doctrine








In Higganbotham, the court listed six
classifications of delegations of legislative responsibility that do not run
afoul of the Nondelegation Doctrine enunciated in article II, section 1 of our
state=s
constitution.[4]  135 Tex. at 171B72, 143
S.W.2d at 87.  The one of primary concern
to us is the first, which states that nondelegation is not violated A[w]here
the legislature because of the nature of the subject of legislation cannot
practically and efficiently exercise such powers . . . .A  Id., 143 S.W.2d at 87 (internal
citations omitted).  While A[t]he
power to pass laws rests with the Legislature, and that power cannot be
delegated to some commission or other tribunal,@  Brown v. Humble Oil & Refining Co.,
126 Tex. 296, 306, 83 S.W.2d 935, 941 (1935), the legislature can delegate
power to a coordinate branch, so long as the legislature has declared a policy
and fixed a primary standard for its implementation.  Ex parte Granviel, 561 S.W.2d 503, 514
(Tex. Crim. App. 1978) (citing Margolin v. State, 151 Tex. Crim.
132,  205 S.W.2d 775 (1947); Williams
v. State, 146 Tex. Crim. 430, 176 S.W.2d 177 (1943)).  That primary standard must be Acapable
of reasonable application.@  Granviel, 561 S.W.2d at 514.

b.  Statutory Provisions








Section 71.021 of the penal code states that a
person commits an offense if the person knowingly violates a temporary or
permanent order issued under section 125.065(a) or (b) of the civil practice
and remedies code, and that this offense is a Class A misdemeanor.  See Tex. Penal Code Ann. ' 71.021.  Section 125.065 of the civil practice and
remedies code outlines when a trial court can enter a temporary or permanent
injunction against a criminal street gang member.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 125.065.  It provides: 

(a) If the court finds
that a combination or criminal street gang constitutes a public nuisance, the
court may enter an order: 

 

(1) enjoining a defendant
in the suit from engaging in the gang activities of the combination or gang; and

 

(2) imposing other
reasonable requirements to prevent the combination or gang from engaging in
future gang activities.

 

(b) If the court finds that a place is habitually
used in a manner that constitutes a public nuisance, the court may include in
its order reasonable requirements to prevent the use of the place for gang
activity.

Id.  The
Texas Legislature enacted this statute in 1993, after establishing that Agang
activity@
constitutes a public nuisance, to enable local governments to obtain civil
injunctions against gang members.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 125.061
(Vernon Supp. 2008), ' 125.062B.065
(Vernon 2005).  The overall purpose and
policy behind the statute is to promote a peaceful society by enjoining gang
members from engaging in a variety of legal and illegal activites within a
specified area, often called the Asafety
zone.@








Section 125.065 provides a guide as to when a
trial court can enter a temporary or permanent order against a criminal street
gang member.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 125.065.  In conjunction with section 125.065, section
71.021 of the penal code describes the offense of violation of a court order
enjoining organized criminal activity.  See
Tex. Penal Code Ann. ' 71.021.  In other words, the legislature has
authorized the trial courts to impose reasonable requirements to prevent a gang
member from engaging in future gang activities while retaining the authority to
impose a class A misdemeanor for violating a court-imposed restriction.  Goyzueta, 266 S.W.3d at 136.








c. 
Analysis

While Lawson complains that section 71.021
violates the nondelegation doctrine, he fails to articulate an argument in
support of his claim other than his statements that A[p]enal
laws by their nature are most appropriately exercised without Legislative
delegation,@ and A[i]n
those instances when delegation is necessary, power is ordinarily assigned if
technical or scientific concerns make enforcement impractical or inefficient
for the legislature.@ 
Lawson further argues that the legislature enacted a law that proscribed
no conduct at all but instead delegated the power to define the misconduct to
district judges through Aanti-gang injunction@ orders.








We disagree on both accounts.  We hold that it is neither practical nor
efficient for the Texas Legislature, which meets every other year for a few
months, to determine the exact requirements necessary in order to prevent gang
members from engaging in future gang activities.  Higganbotham, 135 Tex. at 171B72, 143
S.W.2d at 87; see also State v. Rhine, 255 S.W.3d 745, 752 (Tex. App.CFort
Worth 2008, pet. granted) (holding that it is neither practical nor efficient
for the Texas Legislature to determine exactly what materials should be banned
from outdoor burning, and under what circumstances, including the wind speed,
time of day, and other minutiae related to curbing the legislatively-defined Aair
pollution@).  Therefore, section 71.021 falls within the
first classification listed in Higginbotham.  See Higginbotham, 135 Tex. at 171B72, 143
S.W.2d at 87.

However, even if section 71.021 failed to fall
within one of the six classifications, the listed classifications in Higginbotham
are merely indicative of the supreme court=s prior
decisions on the subject of nondelegation and therefore are not exclusive.  Id., 143 S.W.2d at 87.  Here, the legislature has merely asked the
trial courts to impose reasonable requirements while the legislature retains
the power to make the law by determining that a violation of the requirements,
even those judicially imposed, is an offense. 
See Touby v. United States, 500 U.S. 160, 165, 111 S. Ct. 1752,
1756 (1991) (ACongress does not violate the
Constitution merely because it legislates in broad terms, leaving a certain
degree of discretion to executive or judicial actors.@).[5]  Furthermore, the legislature has defined the
following key phrases:

(1) ACriminal street gang@ means three or more
persons having a common identifying sign or symbol or an identifiable
leadership who continuously or regularly associate in the commission of
criminal activities.

 








(2) AGang
activity@
[includes:] organized criminal activity[;] terroristic threat[;] coercing,
soliciting, or inducing gang membership; criminal trespass[;] disorderly
conduct[;] criminal mischief that causes a pecuniary loss of $500 or more; a
graffiti offense [that:] (i) causes a pecuniary loss of $500 or more; or (ii)
occurs at a school, an institution of higher education, a place of worship or
human cemetery, a public monument, or a community center that provides medical,
social, or educational programs[;] a weapons offense in violation of Chapter
46, Penal Code[;] or unlawful possession of a substance or other item in
violation of Chapter 481, Health and Safety Code. 

(3) APublic nuisance@ [is a] combination or
criminal street gang that continuously or regularly associates in gang
activities.

 

Tex. Penal Code Ann. '
71.01(d) (Vernon 2003); see Tex. Civ. Prac. & Rem. Code Ann. ' 125.061
(using various provisions of the penal code to define these types of activity);
see also id. ' 125.062 (using the penal code
definition for public nuisance as pertaining to gang activities).

Therefore, we hold that these limitations and
guidelines, in addition to the policy reasons behind the enactment of section
71.021, compel us to the conclusion that section 71.021 does not violate the
Nondelegation Doctrine and therefore, is not unconstitutional Aon its
face.@  See Granviel, 561 S.W.2d at 514
(holding that the legislature can delegate power to a coordinate branch, so
long as the legislature has declared a policy and fixed a primary standard for
its implementation).  Accordingly, we
overrule Lawson=s second point.

2. 
As-Applied Challenge








In his final point, Lawson challenges the
constitutionality of section 71.021 Aas
applied@ to him,
claiming that because the State failed to serve process on his biological
mother, Janessa Lawson, in the civil injunction proceeding, the trial court
lacked personal jurisdiction over him to issue the injunction.  Therefore, he argues, because the anti-gang
injunction was void as to him, he could not be prosecuted under section 71.021
for violation of the injunction.








For this court to review an attack on the
constitutionality of a statute Aas
applied,@ Lawson
must first have raised the issue before trial by written motion and have
obtained a ruling on the motion.  Curry,
910 S.W.2d at 496.  In Lawson=s second
motion to dismiss, he asserts the unconstitutionality of section 71.021 in its Aapplication@;
however, he does not reference failure of service of process as the
reason.  Instead, he claims that section
71.021 is unconstitutional Aas
applied@ because
it violates the Separation of Powers Doctrine. 
Based on the record before us, then, Lawson has failed to preserve his Aas
applied@
argument and has forfeited this point because his complaint on appeal must
comport with the one that he made in the court below.[6]  See Heidelberg v. State, 144 S.W.3d
535, 537 (Tex. Crim. App. 2004); Bell v. State, 938 S.W.2d 35, 54 (Tex.
Crim. App. 1996), cert. denied, 522 U.S. 827 (1997); Rezac v. State,
782 S.W.2d 869, 870 (Tex. Crim. App. 1990). 
Therefore, we overrule Lawson=s third
point.

                                          IV.  Conclusion

Having overruled all of Lawson=s
points, we affirm the trial court=s
judgment.

 

BOB
MCCOY

JUSTICE

 

PANEL: LIVINGSTON and MCCOY,
JJ.; and WILLIAM BRIGHAM, J. (Senior Justice, Retired, Sitting by Assignment).

 

PUBLISH

 

DELIVERED: February 5,
2009











[1]See Tex. Penal Code Ann. ' 71.021 (Vernon
2003).





[2]Lawson=s appeal is limited by
the rules of appellate procedure and by the trial court=s certification of his
right to appeal.  See Tex. R. App.
P. 25.2.





[3]On appeal, Lawson argues
that section 71.021 is unconstitutional based on the Nondelegation Doctrine;
however, in his pretrial motions, Lawson argued unconstitutionality based on
the Separation of Powers Doctrine. 
Because Lawson may raise a constitutional challenge to the facial
validity of a statute for the first time on appeal, we will address his second
point.  Garcia, 887 S.W.2d at 861.





[4]Article II, section 1 of
the Texas Constitution of 1876 states:

 

The powers of the
Government of the State of Texas shall be divided into three distinct
departments, each of which shall be confided to a separate body of magistracy,
to wit:  Those which are Legislative to one;
those which are Executive to another, and those which are Judicial to another;
and no person, or collection of persons, being of one of these departments,
shall exercise any power properly attached to either of the others, except in
the instances herein expressly permitted.

Tex. Const. art. II, ' 1.





[5]Decisions of the United
States Supreme Court on the doctrine of separation of powers are instructive in
interpreting our own express constitutional provisions.  Trimmier v. Carlton, 116 Tex. 572, 296
S.W. 1070 (1927).





[6]Furthermore, Lawson=s guardian or custodian,
Carlas Freeman, received notice of the hearing and appeared.  At Lawson=s bond reduction hearing, Freeman testified that
she was Lawson=s mother, although not
his biological mother, and that she had watched after him for eighteen yearsCLawson=s entire life.  Lawson acknowledged Freeman as his Aguardian and next friend@ in pleadings filed on
his behalf.  Freeman appeared at the
hearing, even though Janessa=s name instead of Freeman=s appeared on the
citation, waiving any defect in notice.  See
Tex. Fam. Code Ann. ' 53.06(e) (Vernon 2008)
(allowing anyone but the juvenile to waive service); K.M.P. v. State,
701 S.W.2d 939, 941 (Tex. App.CFort Worth 1986, no writ) (holding that any right
of juvenile=s father to be served
with copy of summons and a petition was waived by father=s appearance and
voluntary submission to jurisdiction of court). 
On these facts, any deficiencies in the service of process did not
adversely affect Lawson=s interests.  See, e.g., Tex. Fam. Code Ann. ' 53.06(a) (stating that,
in juvenile court, issuance of summons shall be directed to the child named in
the petition and the child=s parent, guardian, or custodian); In
re V.C.H., 605 S.W.2d 643, 647 (Tex. Civ. App.CHouston [1st Dist.] 1980,
no pet.) (holding that failure of juvenile court to serve child=s mother with notice did
not invalidate transfer order where child=s foster father was his custodian and foster
father was served and appeared at the hearing).