936 S.W.2d 371 (1996)
S.D.G.
v.
The STATE of Texas.
No. 14-94-01179-CV.
Court of Appeals of Texas, Houston (14th Dist.).
November 7, 1996.
Rehearing Overruled January 9, 1997.
*373 Marc D. Isenberg, Houston, for appellant.
Rikke Burke Graber, Houston, for appellees.
Before YATES, EDELMAN and O'NEILL, JJ.

OPINION
O'NEILL, Justice.
In this juvenile case, S.D.G.,[1] a minor, appeals a finding that he engaged in delinquent conduct on the grounds that the trial court (1) allowed the testimony of fact and expert witnesses who were not identified in interrogatory answers, (2) unreasonably limited the time in which to conduct voir dire, *374 and (3) admitted evidence without a proper predicate. We affirm.

Background
On May 4, 1994, appellant and several of his friends[2] skipped school and spent the day with a man known only as "L.L." Appellant and the other boys each had guns and were playing with them when one of the guns discharged. L.L. became angry and told the boys to leave. The complainant, a man the boys had never met who was at L.L's house, agreed to drive the boys home. He drove the boys across town in his burgundy Buick Riviera. When they stopped at a convenience store for gas, appellant and two of the boys began to talk about robbing someone. When they got back in the car the complainant drove them to D.S.'s house, but C.C. told him to keep driving. The complainant drove them to the Almeda Place subdivision, where the boys stepped out of the car. C.C. told the complainant to get out of the car and pointed a .41 caliber pistol at him. Z.Q., appellant's co-respondent at trial, was holding a .22 caliber pistol, and appellant and S.M. were each armed with shotguns. Even though the complainant begged the boys not to kill him, C.C. fired a shot that knocked him to the ground. The complainant was still on the ground when appellant shot him. C.C. fired one more shot, and the boys drove away in the complainant's car. As the boys drove away, appellant and Z.Q. laughed about the murder. The boys arrived at D.S.'s house and planned to spend the night there. However, during the evening appellant and a few of the boys left.
Around 1:00 a.m. on May 5, one of the boys walked into a convenience store, looked around, and walked out without buying anything. Shortly thereafter, four boys wearing masks came into the store. One of the boys held a gun to the head of the store clerk and led him to the back office. He ordered the clerk to lie on the floor and threatened to kill him. When the robbers were unable to open the safe, they ordered the clerk to return to the front of the store. When the clerk explained that he did not have a key to the safe, the boys made him open several boxes containing lottery tickets. After taking thirty dollars from the cash register, the boys left.
As the boys were robbing the convenience store, a woman entered the parking lot and noticed a boy pacing outside the store. She also saw a Buick Riviera parked near a dumpster. As she pulled up closer to the front door, she noticed appellant pointing a gun toward the clerk and immediately put her car in reverse. However, before she could exit the parking lot, the boys ran out of the store and rushed toward her. The woman ducked down in her seat just as one of the boys shot out her windshield. Her dashboard and headrest were full of shotgun pellets, and she had pellet wounds on her back and hands.
Around 5:00 a.m. that morning, Sumpter Ferguson decided to take a walk around his neighborhood. At the end of his street, in the Almeda Place subdivision, he discovered the complainant's body. An autopsy revealed that the body had sustained four gunshot wounds. There was an entrance wound to the left side of the head, with a partial exit wound on the right side. A large caliber bullet was recovered from this wound. The complainant also sustained a gunshot wound to the right side of the abdomen, perforating several organs and causing significant bleeding. Experts concluded that both the head wound and the wound to the abdomen were fatal.
Later that same morning, D.S. awoke to find the complainant's Riviera parked in front of his house. His friends were asleep inside the vehicle, and he noticed cigarettes, lottery tickets and candy bars inside the car. After waking his friends, D.S. rode with them to appellant's house. On the way, Z.Q. told D.S. they had robbed a store the night before.
Appellant was charged with delinquent conduct[3] for committing capital murder, aggravated *375 robbery, aggravated assault (two paragraphs), and attempted capital murder. After hearing the evidence, the jury found appellant engaged in delinquent conduct and assessed a sentence of forty years.

Point of Error One
In his first point of error, appellant contends the trial court erred by allowing witnesses to testify who had not been identified in response to appellant's interrogatories.
On July 29, 1994, this case was reset for trial on September 19. On August 4, the State filed its application for subpoenas, which listed the names and addresses of witnesses to whom the State requested trial subpoenas be issued.[4] On August 8, 1994, appellant mailed interrogatories to the prosecutor which requested, among other things, the identity of lay and expert witnesses and the expert witnesses' mental impressions. The State did not answer the interrogatories, and appellant filed a pretrial motion to exclude testimony from the State's undisclosed lay and expert witnesses. At the hearing on the motion, which occurred after the jury was seated and sworn, the prosecutor argued that the testimony should not be excluded because she had told appellant "when we did discovery in court" that her file was completely open and that the subpoenas were filed and were part of the court record. The prosecutor further argued:
[W]e talked about the fact of interrogatories. [sic]
Anything he wanted to know I would tell him. So we did not have to go through with interrogatories. Also, today, I told them both [the respondents] verbally the parents of the respondents would be called for identification for date of birth, and [the other respondent's] mother would be called as a witness in the case, as a fact witness, that was the agreement we made.
They had access to everything. In no way has he been harmed. He knows the medical examiner has been called. The address of the medical examiner, the name of the medical examiner, the name of the ballistics guy, everything, he has known.
Although appellant's counsel did not dispute the prosecutor's statements, he denied that there was an agreement relieving the prosecutor from answering the interrogatories. Appellant's counsel also argued that, while he had indeed reviewed the prosecutor's file, it did not include information needed to answer several of the interrogatories.[5] The prosecutor reiterated that she had made a deal with appellant that anything he wanted would be furnished to him. However, no written, signed agreement was filed with the court or made in open court and entered of record. See TEX.R. CIV. P. 11.
The trial court asked the prosecutor if she had made the same deal with Mr. Saranello, co-respondent's counsel. The prosecutor stated that Saranello "did not file any discoveries," but he was there when the prosecutor talked about her open-file policy. At the court's request, Saranello confirmed that the prosecutor had told appellant's counsel that she had an open-file policy. Appellant responded that the prosecutor's file contained over 400 names, that he was not sure he was given the entire file each time he asked to review it and, in any event, the prosecutor was bound by Rule 215(5).[6] The record indicates *376 that the prosecutor's file was in the courtroom for the trial court to examine. Without making an affirmative finding of good cause, the trial court denied appellant's motion to exclude testimony and allowed the State to present the testimony of all nineteen of its witnesses. Before all but two of these witnesses testified, appellant again objected to the testimony on the basis of Rule 215(5).
Relying upon the civil discovery rules, appellant contends the trial court erred when it failed to apply the automatic sanction provisions of Rule 215(5) and strike the State's witnesses. Appellant claims the trial court failed to make an affirmative finding of good cause for the State's failure to respond, and the record does not otherwise demonstrate that good cause existed.
At the time of trial, Section 51.17 of the Texas Family Code provided that "[e]xcept when in conflict with a provision of [the Juvenile Justice Code[7]], the Texas Rules of Civil Procedure govern proceedings under this title."[8] Before enactment of the Juvenile Justice Code in 1973, the Texas Supreme Court interpreted this provision to mean that juvenile proceedings were governed "as far as practicable" by the rules of civil procedure. In re M. R., 858 S.W.2d 365, 366 (Tex.1993), cert denied, 510 U.S. 1078, 114 S.Ct. 894, 127 L.Ed.2d 87 (1994). However, in enacting the Juvenile Justice Code in 1973, the Legislature replaced the "as far as practicable" qualification with the "except when in conflict" provision. Id. Therefore, unless in conflict with the Juvenile Justice Code, the Rules of Civil Procedure apply. Id; see also Vasquez v. State, 739 S.W.2d 37, 42 (Tex. Crim.App.1987) (holding delinquency proceedings are civil in nature and the Code of Criminal Procedure does not apply unless the Legislature evinces a contrary intent).
Although the State does not contend that the civil discovery rules conflict with the Juvenile Justice Code, we believe that they do. The wide range of discovery afforded under the civil discovery rules allows the parties to conduct a virtual "fishing expedition" that often takes years to complete. For example, in the present case appellant's interrogatories requested, inter alia, "the names, addresses and telephone numbers of any persons having any knowledge of facts relevant to the subject matter of this suit or who have or may have knowledge of any discoverable matter relevant to this suit and the subject matter of such knowledge...." Appellant acknowledges that the prosecutor's file contained over four hundred names. Application of the civil discovery rules in the present case would have allowed the appellant to take the depositions of most, if not all, of these individuals if he had so desired. In all likelihood, a juvenile defendant could attain the age of majority before completing the wide open discovery afforded under the civil rules. Wholesale application of the civil discovery rules in juvenile proceedings directly conflicts with the express provision in the Juvenile Justice Code that its purpose is "to provide a simple judicial procedure through which the provisions of this title are executed and enforced...." TEX. FAM.CODE ANN. § 51.01 (Vernon 1989) (emphasis added).[9] As a result, the trial court did not err in failing to apply the automatic sanction provisions contained in the civil discovery rules.
Even if the appellant was entitled to propound discovery requests to the State *377 in accordance with the civil discovery rules, we do not believe the trial court abused its discretion in allowing the witnesses to testify. Under the civil rules, a party who fails to respond to or supplement his response to a discovery request is not entitled to present the evidence he was obligated to provide unless the trial court finds that good cause sufficient to require admission exists. Tex.R. Civ. P. 215(5); Aluminum Co. of Am. v. Bullock, 870 S.W.2d 2, 3 (Tex.1994). To preserve error, the party opposing admission of testimony must object when the testimony or evidence is offered at trial. Clark v. Trailways, Inc., 774 S.W.2d 644, 647 (Tex. 1989), cert denied, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1028 (1990). The party offering the testimony then has the burden of showing good cause. Tex.R. Civ. P. 215(5); Aluminum Co. of Am., 870 S.W.2d at 3. The good cause which must be shown is for the failure to respond to discovery. Clark, 774 S.W.2d at 646. The good cause exception permits a trial court to excuse a failure to comply with discovery in difficult or impossible circumstances, and the trial court has discretion to determine whether good cause is shown. Id.
While the trial court's finding of good cause need not be expressly stated, the good cause must be shown in the record. TEX.R. CIV. P. 215(5); See Henry S. Miller Co. v. Bynum, 836 S.W.2d 160, 161, 162 (Tex.1992) (holding that even though trial judge did not make an express finding that there was good cause for witness to testify as fact witness, the trial judge did not abuse his discretion); Alvarado v. Farah Mfg. Co., Inc., 830 S.W.2d 911, 913-14 (Tex.1992). A reviewing court must therefore determine whether the trial court's implicit or explicit finding that the offering party met its burden of showing good cause was arbitrary and unreasonable, i.e., made without reference to any guiding rules or principles. Aluminum Co. of Am., 870 S.W.2d at 2.
Appellant argues that, because the Rules of Civil Procedure apply to juvenile proceedings, the trial court was required to follow the discovery procedures applicable in civil cases, including their "good cause" parameters and automatic sanction provisions. The dissent agrees with this argument, and believes that the trial court abused its discretion in refusing to automatically strike the State's witnesses under Rule 215(5). Such an argument, however, finds no support in the civil origination of the juvenile system and completely ignores the quasi-criminal nature of a juvenile proceeding.
From the inception of the juvenile justice system in 1899 in Cook County, Illinois, juvenile courts have been considered "a civil, socio-legal entity distinct and separate from the criminal justice system." Lanes v. State, 767 S.W.2d 789, 791 (Tex.Crim.App.1989). The purpose of this distinction was predicated on the theory that the child engaging in delinquent behavior benefited from informal rehabilitative treatment rather than formal procedure and punishment; in this respect the juvenile system was set up to be "the very antithesis of the adult criminal system." Id. The commendable aspirations underlying the enactment of the juvenile statutes contemplated the State proceeding as parens patriae, with the welfare of the child being the primary concern. Id. at 792. The entire juvenile system was designed to promote informality and openness in a relaxed atmosphere to facilitate prompt, personalized and professional responses to the child's needs. Id. The rigid and punitive adult model was discarded, and the procedural and constitutional rights inherent in that system were considered unnecessary. Id. This reasoning formed the basis for conducting juvenile proceedings according to the rules developed in civil actions. Id. at 793; see TEX. FAM.CODE ANN. § 51.17 (Vernon 1996)(juvenile proceedings still maintained as civil action).
Nowhere do the purposes underlying the definition of juvenile proceedings as "civil" actions indicate an intention or desire to incorporate wholesale the civil rules governing pretrial discovery. To the contrary, the Supreme Court of Illinois, the very state that created the first juvenile statute upon which virtually every juvenile system in the nation is modeled, has recognized that, although a delinquency proceeding is civil in nature, "it is sufficiently distinct from other civil actions to make inappropriate the automatic application of discovery provisions applicable to civil *378 cases." People ex rel. Hanrahan v. Felt, 48 Ill.2d 171, 269 N.E.2d 1, 4 (1971). Similarly, in Joe Z. v. Superior Court of Los Angeles County, 3 Cal.3d 797, 91 Cal.Rptr. 594, 478 P.2d 26 (1970)(en banc), the Supreme Court of California stated:
... the `civil' label-of-convenience ... cannot obscure the quasi-criminal nature of juvenile proceedings.... The need for expeditious and informal adjudications in juvenile court ... belies the wisdom or necessity of any indiscriminate application of civil discovery procedures.

91 Cal.Rptr. at 596, 478 P.2d at 28 (emphasis added) (citations omitted).
Both Hanrahan and Joe Z. were cited with approval by the Dallas Court of Appeals in T.P.S. v. State, 590 S.W.2d 946, 954 (Tex.Civ. App.Dallas 1979, writ ref'd n.r.e.). In T.P.S., appellant complained of the trial court's action in quashing his notice to take the deposition of an investigating officer who later became a witness for the State. Recognizing the quasi-criminal nature of the juvenile proceedings, the court stated:
Although section 51.17 of the Code provides that the Texas Rules of Civil Procedure govern proceedings involving delinquent children and children in need of supervision, it is doubtful whether all the discovery procedures available under the Rules are applicable. Although we find no Texas authority on this question, courts in other jurisdictions have held that the trial judge may restrict the scope of discovery more in a juvenile case than in other civil cases.
Id. at 954 (emphasis added)(citing Joe Z. and Hanrahan). The court found that the defendant had failed to demonstrate surprise by the investigating officer's testimony, or that he was otherwise prejudiced by lack of opportunity to take the deposition. Id.
In Hanrahan, the juvenile's attorney served the State with notice of his intention to take the deposition of the rape and robbery victim. Hanrahan, 269 N.E.2d at 2. The State was also served with a request for documents and additional information, including a list of witnesses who might be called by the State and their statements. Id. The trial court ordered the State to comply with the discovery requests on the basis that the case was a civil proceeding under the Juvenile Court Act, and the court was therefore required to follow the discovery procedures applicable in civil cases. Id. The Supreme Court of Illinois held that the trial court erred in finding that the requested discovery was compelled by the civil nature of the action, and that it was inappropriate to automatically apply the discovery provisions applicable to civil cases. Id. at 4. The court stated:
This is not to say that the juvenile court may never allow a broader discovery than is allowed in criminal cases. It may be that the purposes behind the delinquency proceeding would be furthered by doing so. If, in the case before us, it appeared that the judge had considered any possible adverse effects and had then exercised his discretion and entered the challenged orders, we would not interfere.... There was no showing, for example, as to the wisdom of directing that the deposition of the prosecuting witness be taken. We hold that the civil discovery provisions do not routinely apply to juvenile delinquency proceedings, but that their applicability should be left to the discretion of the court.

Id. (emphasis added). The trial court's discovery order was vacated, and the court was directed to consider whether the requested discovery should be allowed, weighing the benefits and dangers of the particular discovery requested. Id.
In Lanes v. State, the Texas Court of Criminal Appeals adopted a balancing test to determine whether and to what degree constitutional protections afforded in criminal proceedings should be extended to juvenile proceedings, comparing the purposes and goals of the juvenile system to the particular right being asserted. Lanes, 767 S.W.2d at 794. Applying such a balancing test to the issue before us, we compare the discovery rights being asserted by appellant with the purposes and goals of the juvenile system, which are set out in the Family Code as follows:
*379 This title shall be construed to effectuate the following public purposes:
(1) to provide for the care, the protection, and the wholesome moral, mental, and physical development of children coming within its provisions;
(2) to protect the welfare of the community and to control the commission of unlawful acts by children;
(3) consistent with the protection of the public interest, to remove from children committing unlawful acts the taint of criminality and the consequences of criminal behavior and to substitute a program of treatment, training, and rehabilitation;
(4) to achieve the foregoing purposes in a family environment whenever possible, separating the child from his parents only when necessary for his welfare or in the interest of public safety and when a child is removed from his family, to give him the care that should be provided by parents; and
(5) to provide a simple judicial procedure through which the provisions of this title are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.
TEX. FAM.CODE ANN. § 51.01 (Vernon 1989).[10] Although rehabilitation and child protection are primary concerns of the juvenile system, so is the welfare of the community in preventing antisocial behavior sufficiently serious that, but for the juvenile's age, a criminal prosecution would result. See Hanrahan, 269 N.E.2d at 3-4. Moreover, the need for expeditious and informal adjudications in juvenile courts counterbalances the purposes of, and the necessity for, the wide open discovery generally allowed under the civil rules. As a result, the trial court should be afforded considerable latitude in determining the parameters of permissible discovery in a juvenile proceeding.[11]Joe Z., 91 Cal.Rptr. at 596, 478 P.2d at 28; see also T.P.S. v. State, 590 S.W.2d at 954.
For the foregoing reasons, we believe it was the appellant's duty in the first instance to demonstrate to the court the necessity for the requested discovery. Because the appellant failed to do so, the trial court did not err in refusing to strike the State's witnesses. Moreover, even if the State was required to show good cause for failure to answer the interrogatories, the record contains ample evidence of good cause to justify the trial court's ruling. The State communicated its open file policy to appellant's counsel, who was afforded unlimited access to the file. Although the State's open file policy alone might be insufficient to establish good cause, we believe that other circumstances support the trial court's implicit good cause finding. Appellant's counsel knew the State did not intend to answer the interrogatories because the prosecutor believed she had an agreement, albeit oral, that production of the State's file would be sufficient. Nevertheless, appellant's counsel failed to inform the State that its belief was incorrect, nor did he seek to otherwise compel a response. Instead, appellant's counsel waited until the jury was seated and sworn, and jeopardy had attached, to insist upon answers to his interrogatories.[12] Appellant failed to demonstrate *380 that the presentation of his defense was hampered in any way by the State's failure to answer the interrogatories. In fact, counsel for the co-respondent stated that he knew about all of the State's witnesses and that he had been afforded open access to the State's file. Finally, appellant made no showing that he was surprised in any way by the State's evidence or its witnesses. For these reasons, the trial court's implicit finding of good cause was not arbitrary or unreasonable and was within its discretion.
Point of error number one is overruled.

Point of Error Two
In his second point of error, appellant contends the trial court abused its discretion by unreasonably limiting voir dire, thereby preventing him from asking proper questions of the venire so that he might intelligently use his peremptory challenges.
The purposes of voir dire are to (1) develop rapport between the officers of the court and the jurors, (2) expose juror bias or interest warranting challenge for cause, and (3) elicit information necessary to the intelligent use of peremptory challenges. Godine v. State, 874 S.W.2d 197, 199 (Tex.App. Houston [14 Dist.] 1994, no pet.). The trial court's decision to restrict voir dire is reviewed for an abuse of discretion. McCarter v. State, 837 S.W.2d 117, 119 (Tex.Crim.App. 1992). A two-part test applies when a party complains of an inability to address proper questions to the venire: (1) whether the complaining party attempted to prolong the voir dire; and (2) whether the questions that the party was not permitted to ask were proper voir dire questions. Id. at 119-20. When a party is not permitted to ask questions of individual jurors, the court must additionally consider whether the party was prevented from examining prospective jurors who actually served on the jury. Id.
In the present case, the trial court limited each attorney to a one and one-half hour voir dire. When the court notified appellant's counsel that his allotted time was up, he responded "[t]hat concludes the time I have for voir dire. If there are no other questions for me, thank you very much." After the court excused the jury for a recess, appellant asked for additional time to finish his voir dire. The trial court denied the request, whereupon appellant stated that his questions to the jury "were going to be on the subject of confession, grand jury information, and juror conduct...." Rather than propound specific questions that he wished to ask, appellant merely identified general topics for potential questions. The trial court did not change its ruling.
To preserve error concerning the manner of voir dire, the record must reflect a question which the trial court has not allowed to be answered. Caldwell v. State, 818 S.W.2d 790, 794 (Tex.Crim.App.1991), cert. denied, 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992) (quoting Cockrum v. State, 758 S.W.2d 577, 584 (Tex.Crim.App. 1988), cert. denied, 489 U.S. 1072, 109 S.Ct. 1358, 103 L.Ed.2d 825 (1989) (emphasis in Cockrum)). Like the defendant in Godine, appellant merely narrated a series of topics he wanted to investigate further. See Godine, 874 S.W.2d at 200. In Godine, this court held that such a narration was insufficient to preserve error:
A trial court should not be expected to separate the wheat from the chaff, cull out potentially valid subject matters from overly broad topic descriptions, and anticipate the form in which a specific question emanating from a topic will be asked. To preserve error, it behooved Godine to (1) present to the trial court specific questions formulated in the manner they were to be asked, and (2) obtain an adverse ruling. See Caldwell, 818 S.W.2d at 794. Godine failed to present the trial court with information in a format suitable for efficient judicial review. Godine thereby failed to preserve error.
Id. at 200-01.
Appellant claims he did not fail to preserve error because he later made an offer of proof informing the court of fifty-five specific questions he would have asked had he been allowed to continue the voir dire. However, appellant's offer was made six days after the panel was selected and after the testimony of twelve witnesses had been presented. The purpose of requiring a timely objection is to *381 allow a trial court to determine and rule on the complaint so that the trial may proceed in the proper procedural and substantive manner. Janecka v. State, 823 S.W.2d 232, 243-243 (Tex.Crim.App.1992) (opinion on reh'g). At the time appellant made his offer, there was nothing the court could do to rectify the alleged error. Appellant's untimely offer of proof was therefore insufficient to preserve error.
Appellant's second point of error is overruled.

Points of Error Three and Four
In his third and fourth points of error, appellant contends the trial court abused its discretion by admitting into evidence photographs and a videotape cassette without laying the proper predicate.
The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. TEX.R. CIV. EVID. 901(a). Rule 901(b) of the Texas Rules of Civil and Criminal Evidence contains the authentication or identification requirements for certain types of evidence. TEX.R. CIV. EVID 901(b); TEX.R.CRIM. EVID. 901(b). Although photographs and videotapes are not included among these illustrations, there is a well-established common law predicate for the admission of these items into evidence. DeLuna v. State, 711 S.W.2d 44, 46 (Tex. Crim.App.1986).
The predicate for introduction of a photograph and a videotape not accompanied by a sound recording requires proof of (1) its accuracy as a correct representation of the subject at a given time, and (2) its relevance to a material issue. Huffman v. State, 746 S.W.2d 212, 222 (Tex.Crim.App.1988); DeLuna, 711 S.W.2d at 46.[13] This predicate need not be laid by the photographer, the person photographed, or even a person who was present when the photograph was taken. Huffman, 746 S.W.2d at 222. Any witness who observed the object or the scene depicted in the photograph may lay the predicate. Id. The trial court is afforded considerable discretion in ruling on the admissibility of photographic evidence. Id. "When a motion picture or a photograph is a proper representation of an important fact in issue, the admission or rejection of it is a matter which rests largely within the discretion of the trial judge, and that decision will not be disturbed on appeal unless an abuse of discretion is shown." Apache Ready Mix Co., Inc. v. Creed, 653 S.W.2d 79, 84 (Tex.App.San Antonio 1983, writ dism'd) (citing Richardson v. Missouri-K-T.R. Co. of Texas, 205 S.W.2d 819, 824 (Tex.Civ.App.Fort Worth 1947, writ dism'd); R. Ray, 2 TEXAS LAW OF EVIDENCE § 1466, 3d Ed. (1980)).
Appellant first contends a proper predicate was not laid for the introduction of exhibits 21-28, which are photographs of S.D.G. and his co-respondent. The State introduced the photographs through the testimony of Sergeant Robert Parish:
Q: I'm going to hand you State's Exhibits No. 21 through 28. If you will look at these photographs and tell me if you can identify these photographs?
A: Yes, ma'am.
Q: When were these photographs taken?
A: I believe it was after the statements were taken.
Q: So that was onwas it on May 5th, 1994?
A: Yes, ma'am, May 5th.
Q: Do these photographs fairly and accurately depict what they would purport to depict?
A: Yes, ma'am.
[PROSECUTOR]: State offers No. 21 through 28 into evidence.
* * *
[DEFENSE]: Your Honor, I object to improper foundation. Proper foundation *382 has not been laid for admission of the photographs, Your Honor.
[PROSECUTOR]: Response? I laid the foundation. He can identify them. He told the Court when they were taken and they purport what they purport to depict. [sic]
[DEFENSE]: Your Honor, he does not have firsthand knowledge.
* * *
THE COURT: Objection overruled. Admitted into evidence.
Appellant cites Davidson v. Great Nat. Life Ins. Co., 737 S.W.2d 312, 315 (Tex.1987) to support his argument that a proper predicate was not established for admission of the exhibits. However, Davidson supports the opposite conclusion. There, the witness testified he was not present when the pictures of the deceased were taken at the morgue, but he was present at the scene of the accident. Id. The witness then testified that the body in the picture was the same body he saw at the scene. Id. The court held that the testimony was competent to authenticate the photograph. Id. In the instant case, Sergeant Parish was one of the officers who arrested the defendants and took them before a magistrate. The photographs were taken the same day. Even though Sergeant Parish was not present when the pictures were taken, he could competently testify that the pictures were a fair and accurate depiction of the defendants. We find a proper predicate was laid for the admission of exhibits 21 through 28.
Appellant next contends the State failed to lay a proper predicate for the admission of a copy of the photo-spread which had been shown to the complainant. The State introduced a copy of the photo-spread through Sergeant Terry Scoggins of the Houston Police Department.
Q: Officer, I'm going to show you what's been previously marked as State's Exhibit No's 64, 65, and 66; do you recognize State's Exhibits
A: Yes. These are copies of the same photo spreads that I showed to complainant, Mr. Kim.
Q: Are youare these the exact copies of the photographs you showed?
A: Yes, sir, they are.
Q: In State's Exhibit No. 64, was Mr. Kim able to identify anyone in this exhibit?
A: Yes, sir, he was.
[DEFENSE]: We object from the witness testifying regarding being admitted into evidence.
THE COURT: Has this been admitted? The objection is sustained.
Q: Officer was Sang Kim able to positively identify any of the individuals in the pictures I showed you?
A: Yes, he was.
Q: Was he able totentatively identify any of the pictures I've shown you?
A: Yes, he was.
[PROSECUTOR]: Your Honor, I ask that State's Exhibit No. 64, 65, and 66 and let the record reflect I'm tendering to opposing counsel for its examination. I ask it be admitted into evidence.
[DEFENSE]: Your Honor, we object in terms of proper foundation has not been established for admission of these photos.
* * *
THE COURT: Objection overruled. Admitted into evidence.
Appellant contends there is no evidence that the photo-spread is a correct representation of the facts portrayed. The State counters that the exhibits were not offered to show the truth of the facts depicted in the pictures, i.e. the identification of the individuals portrayed, but to show that the photo-spread was the same document the complainant viewed at the police station. Thus, the State argues, it was not required to lay the predicate for the admission of photographs. We agree. The State was not required to put someone on the stand who knew the identity of every individual in the photo-spread. The officer identified the exhibits as "[exact] copies of the same photo spreads that I showed to complainant, Mr. *383 Kim." An objection to the admission of evidence on the ground that no proper predicate has been laid is too general to merit consideration, unless the basis for the objection is apparent from the record. Bird v. State, 692 S.W.2d 65, 70 (Tex.Crim.App.1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986); Brockway v. State, 853 S.W.2d 174, 176 (Tex.App.Corpus Christi 1993, pet. ref'd). We are unable to determine from the objection or from the record in what respect the exhibits lacked a proper predicate.
Appellant next contends the State failed to lay a proper predicate for introduction of the videotape taken at the Stop-N-Go during the robbery. The proper predicate for admitting a videotape requires proof of (1) its accuracy as a correct representation of the subject at a given time and (2) its relevance to a material issue. Farrell v. State, 837 S.W.2d 395, 400 (Tex.App.Dallas 1992), aff'd 864 S.W.2d 501 (Tex.Crim.App.1993). The videotape must accurately and correctly depict the people and scenes shown. Sherrill v. Estate of Plumley, 514 S.W.2d 286, 293 (Tex.Civ.App.Houston [1st Dist.] 1974, writ ref'd n.r.e.). Appellant claims there was no evidence of the accuracy of the tape because the officer who testified to its authenticity was not present at the scene and could not testify whether the action on the tape was accurate. Although appellant contends "no other witness testified that the videotape accurately depicted the activities at the Stop-N-Go at the time of the robbery," the convenience store clerk who was present during the robbery did testify.
Q: Did you have a chance to observe the videotape that was taken from the store that depicts the robbery?
A: Yes, ma'am.
Q: And when did you view that videotape?
A: I viewed it, I think, I didn't view the whole tape, I just viewed parts of it that night when the police were there and then, again, prior to coming into court this morning I viewed parts of the video.
Q: And did that video fairly and accurately depict what happened when they robbed you on May 5th, 1994?
A: Yes, ma'am.
The convenience store clerk was present at the robbery and testified to the accuracy of the scenes depicted in the video. The testimony of the officer and the clerk created a proper predicate for admission of the videotape.
Points of error three and four are overruled.

Point of Error Five
In his fifth point of error, appellant contends the trial court abused its discretion by admitting items from the crime scene. Specifically, appellant complains that the proper chain of custody was not established for the admission of (1) wadding from a shotgun (exhibit 17), (2) six metal fragments (exhibits 18, 19, 20), and (3) a shell casing, fragments, shotgun shell and shotgun wadding (exhibit 41).
"Tagging an item of physical evidence at the time of its seizure and then identifying it at trial based upon the tag is sufficient for admission barring any showing by the defendant of tampering or alteration." Stoker v. State, 788 S.W.2d 1, 10 (Tex.Crim. App.1989), cert. denied, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990) (citing Garcia v. State, 537 S.W.2d 930, 934 (Tex.Crim. App.1976)). "The chain of custody is conclusively proven if an officer is able to identify that he or she seized the item of physical evidence, put an identification mark on it, placed it in the property room, and then retrieved the item being offered on the day of trial." Id. (citing Elliott v. State, 450 S.W.2d 863, 864 (Tex.Crim.App.1970)). In the absence of any evidence of tampering, an objection that the State failed to establish a chain of custody goes to the weight of the evidence rather than its admissibility. Bird v. State, 692 S.W.2d at 70; Coleman v. State, 833 S.W.2d 286, 289 (Tex.App.Houston [14th Dist.] 1992, pet. ref'd); Dart. v. State, 798 S.W.2d 379, 382 (Tex.App.Fort Worth 1990, pet. ref'd). Appellant does not contend that the evidence was tampered with.
*384 At trial, Officer Delinda Wilker identified exhibit 16 as the bag in which she placed the evidence she retrieved from the scene of the homicide. She further testified that she recovered exhibits 17, 18, 19, and 20 from around the victim's body and placed them in exhibit 16, sealed the bag, signed the bag, and placed the bag in a firearms box in the firearms lab. Wilker testified that prior to trial she went to the firearms lab and retrieved exhibit 16. Wilker further testified that the exhibits appeared to be in the same condition they were in when she retrieved them from the scene. We find that the proper chain of custody was established for exhibits 17 through 20.
Appellant next argues that a proper chain of custody was not established for exhibit 41 because "there is no testimony how the Harris County Morgue came into custody of the items in exhibit 41 and there is no testimony that Officer Tuttle retrieved Exhibit 41 on the day of trial." Dr. Eduaro Bellas from the Harris County Morgue testified that a large caliber bullet, shotgun wadding, shell fragments, and shot pellets were recovered from the victim. Although Dr. Bellas did not identify exhibit 41, he identified exhibit 40 as a photograph of these items. Officer Tuttle testified that he recovered those items from the morgue and placed them into an evidence envelope which he sealed and submitted to the lab. Tuttle confirmed that he retrieved the items on the day he testified, and identified the items in exhibit 41 as the same items he placed into the evidence envelope that he picked up from the morgue. We find that a proper chain of custody was established for the admission of exhibit 41.
Point of error five is overruled.
The judgment of the trial court is affirmed.
Edelman, Justice, dissenting.
I agree with the opinion of the majority except as to allowing the State's witnesses, who were not identified in interrogatory answers, to testify. Concerning that issue, the majority opinion correctly recites the authorities providing that, under the civil discovery rules and caselaw, exclusion of those witnesses was mandatory without a showing of good cause by the State.
In addition, the purpose of the good cause exception is to excuse a failure to comply with discovery in difficult or impossible circumstances. Alvarado v. Farah Mfg. Co., 830 S.W.2d 911, 914 (Tex.1992). A trial court has discretion to determine whether good cause is shown but not to admit undisclosed evidence without it. Id.
The majority concludes that good cause was satisfied by a combination of the State's open file policy, the prosecutor's belief that she need not answer the interrogatories, appellant's failure to seek to compel a response to the interrogatories before jeopardy attached, and appellant's failure to show that he was surprised by the State's evidence or otherwise prejudiced by its failure to answer the interrogatories.
As to the State's open file policy, because the contents of the State's file are not in the record, we cannot determine whether the file contained the information necessary to answer appellant's discovery requests, even at the time of trial.[1] Therefore, as the majority acknowledges, the State's open file policy did not alone satisfy the good cause requirement.[2] However, neither do the other factors relied upon by the majority amount to such a difficult or impossible situation that a finding of good cause for the State's failure to respond to appellant's interrogatories *385 would be justified in an ordinary civil case.[3] The only question then is whether, because this was a juvenile proceeding, the Rules of Civil Procedure somehow operate differently.
As the majority acknowledges, at the time of trial, section 51.17 of the Texas Family Code provided that "[e]xcept when in conflict with a provision of [the Juvenile Justice Code], the Texas Rules of Civil Procedure govern proceedings under this title."[4] The rules of civil procedure had then been applied in juvenile proceedings for many years. See, e.g., Steed v. State, 143 Tex. 82, 183 S.W.2d 458, 459 (1944).[5] Before enactment of the Juvenile Justice Code in 1973, the Texas Supreme Court interpreted the former version of section 51.17, much as the majority opinion interprets the current version in this case, to mean that juvenile proceedings were governed "as far as practicable" by the rules of civil procedure. In re M. R., 858 S.W.2d 365, 366 (Tex.1993), cert denied, 510 U.S. 1078, 114 S.Ct. 894, 127 L.Ed.2d 87 (1994). Importantly, however, in enacting the Juvenile Justice Code in 1973, the legislature replaced the "as far as practicable" qualification with the "except when in conflict" provision. Id. Therefore, the Texas Supreme Court expressly held that relying on adult criminal cases and criminal procedure rules in juvenile cases conflicts with the express Family Code provision which requires that the Rules of Civil Procedure apply. Id.[6]
In this case, the majority holds that the civil discovery rules conflict with section 51.01 of the Juvenile Justice Code in that full-scale civil discovery does not provide a simple judicial procedure through which the provisions of the Code are enforced. In addition, civil discovery is somehow inconsistent with the origins of the juvenile system and the quasi-criminal nature of a juvenile proceeding. Therefore, pursuant to such cases as Hanrahan, the majority concludes that application of civil discovery provisions in juvenile cases is not automatic, but is left to the discretion of the trial court. For these reasons, the majority imposes upon appellant a duty to have demonstrated to the trial court the necessity for the requested discovery in the first place, and, because appellant failed to satisfy this duty, the majority concludes that the trial court did not err in refusing to strike the State's witnesses.
This approach is not only contrary to the rules applied in ordinary civil cases, it is not warranted by these facts. The interrogatories in question here simply asked for the identity of persons with knowledge of relevant facts and the identities and mental impressions of the State's expert witnesses. Nothing about providing this information conflicts with any provision of the Juvenile *386 Justice Code, its purpose to provide a simplified judicial procedure, or the origins or quasi-criminal nature of juvenile proceedings. The record here contains no indication that appellant requested depositions of any of the 400 names reportedly in the State's file, nor would he have needed any interrogatories to be answered before making such a request. The State does not contend that appellant's use of discovery procedures prolonged or obstructed his adjudication.[7] To the extent the State's file actually had 400 names in it, requiring the State to disclose which of those individuals had knowledge of relevant facts would have done more to simplify the procedure than putting appellant in a position to investigate all 400 of them. In any event, if application of the civil discovery rules to juvenile cases was deemed unwise after all these years, it was up to the Legislature to change that requirement, as it did, and not up to the courts to disregard it.
With regard to whether allowing the witnesses to testify was harmful, the civil standard for harmless error applies to juvenile delinquency adjudications. In re G.M.P., 909 S.W.2d 198, 210 (Tex.App.Houston [14th Dist.] 1995, no writ). Under that standard, error is not harmful unless appellant shows that it amounted to such a denial of his rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment or prevented appellant from making a proper presentation of his case to the appellate court. TEX.R.APP. P. 81(b); McKinney v. Nat'l Union Fire Ins. Co., 772 S.W.2d 72, 75 (Tex.1989). This determination is made by looking at the entire record to see whether the judgment was controlled by the testimony that should have been excluded. Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 230 (Tex.1990). Improper admission of undisclosed evidence that is merely cumulative of properly admitted evidence is harmless error. Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex.1989).
In this case, the testimony of only two of the State's witnesses was not objected to. Of these, the first testified merely that he heard three gunshots at about 1:15 a.m. and later found the murder victim's body.
The second witness was Houston Police Sergeant Novak, who took a written statement from appellant. Novak testified that appellant told him that he was arrested at a gas station after he skipped school and that he was present when the murder victim died. Novak also testified that he typed appellant's statement and that appellant signed it after he returned from a competency hearing in the judge's chambers.
The statement of facts reflects that the written statement to which Novak referred was admitted into evidence as State's exhibit 15. However, this statement was not included in the record initially submitted to this court and was not found by the District Clerk's office when thereafter ordered by this court to be supplemented.[8] Because the testimony of the two witnesses to whom appellant did not object is not sufficient to support the delinquency finding and because appellant's written statement could not be made a part of the record, we can only conclude that the undisclosed witnesses' testimony was essential to material issues in the case and, therefore, that the trial court's error in allowing that testimony was harmful.
To determine whether, upon a reversal, this case could be remanded to the juvenile court, we must determine whether the juvenile court still has jurisdiction over appellant. See State v. Casanova, 494 S.W.2d 812, 813 (Tex.1973); Carrillo v. State, 480 S.W.2d 612, 618 (Tex.1972). The juvenile court has exclusive original jurisdiction over all cases involving the delinquent conduct of a person who was a child within the meaning of the Juvenile Justice Code at the time he engaged in the conduct. Tex. Fam.Code Ann. § 51.04(a) (Vernon 1996). For this purpose, a "child" is a person:
(A) ten years of age or older and under 17 years of age; or

*387 (B) seventeen years of age or older and under 18 years of age who is alleged or found to have engaged in delinquent conduct or conduct indicating a need for supervision as a result of acts committed before becoming 17 years of age.[[9]]
TEX. FAM.CODE ANN. § 51.02(2) (Vernon 1996). Born June 10, 1979, appellant is 17 years old at the date of this opinion. He is alleged to have engaged in delinquent conduct in 1994 before he became 17. Therefore, appellant is a "child" over whom the juvenile court still has jurisdiction. Under these circumstances, the correct disposition of this case is reversal and remand to the juvenile court for further proceedings.
NOTES
[1] Neither the child nor his family may be identified by name in the opinion. See TEX. FAM.CODE ANN. § 56.01(j) (Vernon 1996).
[2] The other minors will also be referred to by their initials.
[3] Among other things, delinquent conduct is conduct, other than a traffic offense, that violates a penal law of Texas punishable by imprisonment or by confinement in jail. Tex. Fam.Code Ann. § 51.03(a)(1) (Vernon 1996). A finding that a child has engaged in delinquent conduct requires proof beyond a reasonable doubt. Tex. Fam.Code Ann. § 54.03(f) (Vernon 1996).
[4] The application does not contain a certificate of service, nor does the record otherwise indicate whether a copy of the application was served on appellant. See Tex.R. Civ. P. 21, 21a.
[5] In particular, appellant argued that the answers to interrogatories 2, 4, 5, 10, and 12 were not in the file. Those interrogatories asked for information concerning the qualifications of experts; description of documents or other tangible things prepared by or for experts or in the possession of persons with knowledge of relevant facts; opinions and qualifications of consulting experts whose work product forms a basis for the opinions of testifying experts; other tangible items relevant to the lawsuit; and witness statements.
[6] Rule 215(5) provides:

A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.
TEX.R.CIV. P. 215(5).
[7] Title 3 of the Family Code is entitled the "Juvenile Justice Code."
[8] Act of May 24, 1973, 63rd Leg., R.S., ch. 544, § 1, 1973 Tex. Gen. Laws 1460, 1469, amended by Act of May 16, 1995, 74th Leg., R.S., ch. 262, § 14, 1995 Tex. Gen. Laws 2517, 2524 (current version at TEX. FAM.CODE ANN. § 51.17 (Vernon Supp.1996)).
[9] In fact, the Legislature impliedly acknowledged such a conflict by amending the Juvenile Justice Code to specifically provide that discovery in juvenile proceedings "is governed by the Code of Criminal Procedure and by case decisions in criminal cases." See Acts 1995, 74th Leg. ch. 262 § 14, eff. January 1, 1996, TEX. FAM.CODE ANN. § 51.17 (Vernon 1996)(emphasis added). At the time this case was tried, the statute had not yet been amended.
[10] Current version at TEX. FAM.CODE ANN. § 51.01 (Vernon 1996).
[11] Another procedure firmly entrenched in the civil rules, summary judgment, has been held to be inapplicable to juvenile proceedings in light of the purposes and goals of the juvenile system as stated in the Family Code. State v. L.J.B., 561 S.W.2d 547 (Tex.Civ.App.Dallas), rev'd on other grounds, 567 S.W.2d 795 (1978); see also Matter of J.L., 664 S.W.2d 119, 120 (Tex.App.Corpus Christi 1983, no writ). Emphasizing that the legislative intent in enacting Title 3 of the Family Code was "to protect juveniles from the taint of criminality and to treat and rehabilitate them," the court stated: "[t]o hold that the summary judgment procedure is appropriate under Title 3 would be to frustrate the very purpose of the act." L.J.B., 561 S.W.2d at 549.
[12] Again, the fact that juvenile proceedings are quasi-criminal in nature cannot be ignored. If this were strictly a civil case, the trial court could have simply declared a mistrial and reset the case to allow the State to answer the interrogatories if it felt justice would be so served. However, because of the double jeopardy protections afforded a juvenile, the trial court's ability to remedy what it perceived to be an unfair application of the discovery rules was severely restricted if not nonexistent.
[13] The proper predicate for the admission of a photograph in a civil trial is the same as that for a criminal trial. Davidson v. Great Nat. Life Ins. Co., 737 S.W.2d 312, 314-15 (Tex.1987) (citations omitted) (holding admission "is conditioned upon its identification by a witness as an accurate portrayal of the facts, and on verification by that witness or a person with knowledge that the photograph is a correct representation of such facts").
[1] Even having the file in the record as it existed at the time of trial would not establish what it contained at previous times, such as 30 days before trial, the deadline for supplementation. See TEX.R. CIV. P. 166b(6).
[2] The record also contains the State's application for subpoenas which was filed with the court shortly before the interrogatories were served on the State. This application lists 37 witnesses of whom 14 were ultimately called to testify at trial. However, five witnesses who were not listed on the application were also called to testify at trial by the State. Moreover, we have found no indication in the record that the State sent a copy of this application to appellant or otherwise specifically notified him of its existence or filing. Nor does the record show whether it was among the materials in the State's file at any time that appellant's counsel reviewed it. Therefore the filing of the application for subpoenas also did not constitute good cause.
[3] The State was not entitled to rely on an understanding that it need not answer the interrogatories absent a Rule 11 agreement. See Tex.R. Civ. P. 11. Similarly, appellant was not required to seek a court order compelling interrogatory answers as a predicate to imposition of a sanction for the failure to answer. Henry S. Miller Co. v. Bynum, 836 S.W.2d 160, 164-65 (Tex.1992). Nor is the lack of surprise or unfairness alone good cause, even where the witness has been deposed before trial. See Sharp v. Broadway Nat'l Bank, 784 S.W.2d 669, 672 (Tex.1990) (per curiam).
[4] Act of May 24, 1973, 63rd Leg., R.S., ch. 544, § 1, 1973 Tex. Gen. Laws 1460, 1469, amended by Act of May 16, 1995, 74th Leg., R.S., ch. 262, § 14, 1995 Tex. Gen. Laws 2517, 2524 (current version at TEX. FAM.CODE ANN. § 51.17 (Vernon Supp.1996)).

Effective January 1, 1996, discovery in a delinquency proceeding is governed by the Code of Criminal Procedure. See TEX. FAM.CODE ANN. § 51.17 (Vernon Supp.1996).
[5] Interrogatories have been available as a farreaching discovery tool in Texas at least since Rule 168 went into effect in 1962. See TEX.R. CIV. P. 168. Under the version of Rule 168 in effect before Rule 166b was promulgated, interrogatories could relate to any matter which could be inquired into in a deposition under former Rule 186a. Under that rule, a deponent could be examined regarding any non-privileged matter which was "relevant to the subject matter involved in the pending action ... [and] reasonably calculated to relate to the discovery of evidence admissible at trial."
[6] See also R.H. v. State, 905 S.W.2d 726, 728 (Tex.App.San Antonio 1995, no writ) (reversing adjudication of delinquent conduct due to testimony of undisclosed witness). Even while the former version of section 51.17 was still in effect, the Court of Criminal Appeals similarly recognized that "[d]elinquency proceedings are civil in nature and the provisions of the Texas Code of Criminal Procedure do not apply unless the Legislature evinces a contrary intent." See Vasquez v. State, 739 S.W.2d 37, 42 (Tex.Crim.App.1987).
[7] Indeed, it is questionable whether many juvenile defendants could afford to conduct enough discovery to significantly delay a juvenile proceeding.
[8] See TEX.R.APP. P. 55(c).
[9] See also Ex parte Mercado, 590 S.W.2d 464, 468 (Tex.Crim.App. [Panel Op.] 1979) (noting that the objective of this provision is to be able to apply corrective measures to juveniles whose chargeable acts are not found out until near their seventeenth year).