NO. 07-97-0347-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 14, 1999

_____

RONNIE FREEMAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 96-422758; HONORABLE JIM BOB DARNELL, JUDGE

_____

Before BOYD, C.J., and QUINN and REAVIS, JJ.

Contending the trial court erred in 1) refusing to permit specific questions on voir dire, 2) misdirecting the jury in the jury charge, and 3) improperly admitting evidence of a juvenile conviction, appellant Ronnie Freemen challenges his conviction of first degree felony murder. The punishment was assessed by the jury at life confinement in the Institutional Division of the Texas Department of

Criminal Justice. Finding merit in appellant's first contention, we reverse the trial court judgment and remand the cause for retrial.

The events giving rise to appellant's prosecution occurred on July 2, 1996. Appellant was the father of two-week-old Draven Upton. When Draven was released from the hospital after his birth, he was on an apnea monitor which would sound an alarm if the baby stopped breathing. On the morning of July 2, 1996, Jennifer Upton, the baby's mother, placed the child in front of appellant with the monitor attached. She asked appellant to watch the baby while she performed errands. In the first of two statements given to police, appellant said that he had fallen asleep and, as he awakened, he believed he "bumped into [Draven] or accidently hit him." Although the apnea monitor did not activate, appellant said he noticed that Draven was not breathing and shook him in an effort to stimulate breathing. About this time, Jennifer returned.

When appellant told Jennifer that Draven was not breathing, she checked and he was alright. However, when the monitor went off, she started performing CPR and told appellant to call for help. Draven was taken to the hospital, where he later died.

In his second statement given to the police, appellant said Draven began crying but when appellant tried to feed him, Draven would not take the bottle or pacifier. He admitted striking Draven on the side of his face. Draven stopped breathing briefly, but he asserted the child started breathing again after appellant shook him not "very hard" shortly before Jennifer returned home.

2

Appellant was charged by a two-count indictment containing multiple paragraphs. Count one charged appellant with injury to a child. Count two alleged, in essence, that appellant 1) caused the death of Draven Upton by committing an act clearly dangerous to human life by striking Draven Upton, 2) in the course of committing the felony offense of injury to a child, appellant committed an act clearly dangerous to human life by striking and shaking Draven Upton, thereby causing his death, and 3) caused the death of Draven Upton by both striking and shaking him with the intent to cause serious bodily injury. Each paragraph also contained an allegation that appellant's use of his hand was the use and exhibition of a deadly weapon. Before trial, the State waived count one of the indictment and proceeded to trial on the count two murder charge. The trial resulted in the verdict and judgment giving rise to this appeal.

The focal point of appellant's first point challenge is the refusal of the trial court to permit him to question the jury panel about the possible effect the fact that the victim was a two-week-old child might have on their verdict. The effect of this refusal, he argues, was to deny him the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the federal constitution and Article 1, Section 10 of the Texas Constitution. It is undisputed that the standard of review in considering trial court *voir dire* rulings is whether the trial court abused its discretion. *See Nunfio v. State*, 808 S.W.2d 482, 484 (Tex.Crim.App. 1991). A voir dire question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Id.*

In supporting his position that the question was proper, appellant cites *Nunfio*. In that case, defense counsel was prohibited from asking the jury panel whether they could be fair and impartial

3

on the crime involved (aggravated sexual assault) if the victim had been a nun. *Id*. at 483. Holding that the question was permissible in order to determine bias or prejudice in favor of the victim, the Court of Criminal Appeals reversed the conviction in the case and remanded it for another trial. That holding was in part based upon *Abron v. State*, 523 S.W.2d 405 (Tex.Crim.App. 1975), in which the court found error in the trial court's refusal to allow defense counsel to inquire if it would make a difference to potential jurors that the black defendant was accused of raping a white woman. In *Maddux v. State*, 862 S.W.2d 590 (Tex.Crim.App. 1993), a case very similar to this one, the court found the trial court reversibly erred in refusing to allow trial counsel to question the venire concerning potential bias in favor of a child victim. *Id.* at 592.

It is the rule that a question which is otherwise proper is not permissible if it seeks to commit the venire members to a certain verdict on a particular set of facts. *Maddux*, 862 S.W.2d at 592 (citing *Allridge v. State*, 762 S.W.2d 146, 163-64 (Tex.Crim.App. 1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989)); *White v. State*, 629 S.W.2d 701, 706 (Tex.Crim. App.1981), *cert. denied*, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982); and *Williams v. State*, 481 S.W.2d 119, 121 (Tex. Crim. App. 1972). In his concurring opinion in *Raby v. State,* 970 S.W.2d 1 (Tex. Crim. App. 1998), *cert. denied*, __U.S. ___, 119 S.Ct. 515, 142 L.Ed.2d 427 (1999), Judge Baird sought to provide guidance for distinguishing between questions that merely seek to ferret out bias and prejudice, and those tending to commit venire members to a particular finding or verdict. *Id.* at 11. In his discussion, Judge Baird commented that, while there did not appear to be a bright line rule, he saw three principles that emerged from cases discussing the question: 1) the venire may not be asked what set of facts would result in a particular verdict, 2) there are no "magic

4

words" revealing a question as one seeking a commitment from venire members, and 3) fact specific questions are not prohibited. *Id.* at 11-12. Although those comments were made in a concurring opinion and by a judge no longer on the court, perusal of the cases he cites as authority for his comment shows it to be worthy of serious consideration.

In this case, the State argues that the proposed question was improper because it "was flat out informing the jury of the victim's name and age" and "was asking the jury to commit the specific facts of the case." It contends that *Bailey v. State*, 838 S.W.2d 919 (Tex.App.--Fort Worth 1992, pet. ref'd), considered an analogous question and its decision is dispositive of appellant's first point challenge. We disagree.

*Bailey*, which was decided a year before *Maddux* and six years before *Raby,* involved a prosecution for sexual assault of a child under two years of age. Defense counsel was not permitted to ask:

> Is there anybody who feels like they might not or could not be fair and give fair consideration of a probated sentence if the evidence showed that the injured party was at that time . . . between one and two years [of age]?

*Id*. at 920. In affirming the trial court ruling, the *Bailey* court reasoned that the question was improper because, as did the question in *White,* it effectively sought to commit the venire to a particular punishment finding before trial. *Id.* at 921-22.

In contrast, the question in this case was much less specific, did not ask the panel about their ability to reach a particular verdict, and therefore did not have any tendency to commit the panel to

5

any particular finding. As did the questions in *Maddux* and *Nunfio,* appellant's question merely sought to determine if the members of the venire had any bias or prejudice in favor of the victim, and did not ask if the venire members were able or willing to make any particular findings despite the victim's age. In *Maddux,* the Court of Criminal Appeals specifically rejected the State's argument that a question concerning the effect of the victim's age on venire members was an attempt to commit them to particular findings. 862 S.W.2d at 592. The question before that court and the one before us is analogous and its reasoning is applicable here.

In arguing the question was improper, the State places significant reliance upon the statement in *Bailey* that "the question presents the venire with specific facts, the name and age of the victim." While it is true that questions with greater factual detail are more likely to be improper, that tendency does not arise from the factual specificity per se. It arises because such questions may tend to commit venire members to a particular verdict on the facts of the case they are about to hear, as contrasted to a mere recital of a fact or facts involved in the case. It is because of this confusion that Judge Baird, in his concurring opinion in *Raby*, opined that fact specific questions were not prohibited per se.

In considering the State's argument that the defense question was improper because it mentioned the name of the victim, we note the holding in *Etheridge v. State,* 903 S.W.2d 1 (Tex. Crim.App. 1994), *cert. denied*, 516 U.S. 920, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995). In that case, the court held that the trial court did not err in allowing the prosecution to use a chart during voir dire showing the victim's name. *Id.* at 8. We do not believe that the use of the victim's age directly,

6

rather than stated as a part of a hypothetical question, carried any taint. This is particularly true here when the victim's age was not a contested issue and one of the significant issues during voir dire was whether the members of the venire were influenced by the substantial pretrial publicity given to the case.[1] Suffice it to say that we find the question sought by appellant was proper and the trial court erred in overruling it. Having made that decision, we must next decide if the question's exclusion mandates reversal.

In *Nunfio,* the Court of Criminal Appeals held the denial of a proper question during voir dire was not subject to harmless error analysis. However, in *Cain v. State*, 947 S.W.2d 262 (Tex.Crim. App. 1997), the court held that except for certain constitutional errors "no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis." *Id.* at 264. In doing so, however, the court noted that some errors might defy analysis by harmless error standards or there might be insufficient information upon which to conduct a meaningful harmless error analysis. *Id.* Indeed, while recognizing that some kinds of errors would never be harmless under the applicable test, the court cautioned that appellate courts should not automatically foreclose the application of the harmless error to certain categories. *Id.* For example, in *Cena v. State,* 991 S.W.2d 283 (Tex.Crim.App. 1999), and *Gonzales v. State,* 994 S.W.2d 170, 171 (Tex.Crim.App. 1999), both of which involved error in limiting voir dire questions, the court vacated judgments of the Courts of Appeals and remanded causes to them for the purpose of conducting harmless error analyses.

---

[1]We also note that the State questioned the venire members if they were able to give a defendant who "might be 17" a life sentence. It would appear that this question had a greater tendency to commit the venire to a particular question than that which the defense sought to ask.

Rule 44.2 of the Texas Rules of Appellate Procedure sets out the standard by which we determine if trial error requires reversal. It sets out two tests which depend on the type of error committed. For constitutional error which is subject to harmless error review, an appellate court must reverse "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a). For other types of errors reversal is not required if the error does not "affect substantial rights." Tex. R. App. P. 44.2(b).

The right to assistance of counsel and to trial by an impartial jury is guaranteed by the Sixth Amendment to the Federal Constitution, made applicable to the states by the Fourteenth Amendment. A like guarantee is provided by the Texas Constitution in Article 1, Section 10 of that document. In *Linnell v. State*, 935 S.W.2d 426, 428 (Tex.Crim.App. 1996), the court held that the right to the assistance of counsel encompasses the right of counsel to question the members of the jury panel in order to intelligently exercise peremptory challenges. *See also Shipley v. State*, 790 S.W.2d 604, 607-08 (Tex.Crim.App. 1990); *S.D.G. v. State*, 936 S.W.2d 371, 380 (Tex.App.--Houston [14th Dist.] 1996, pet. denied). Thus, because appellant's complaint implicates his constitutional right to an impartial jury, we must reverse unless we can determine beyond a reasonable doubt that the error did not contribute to his conviction or punishment.

In contending that the "substantial right" test rather than the constitutional error test is applicable, the State cites and relies upon *Jones v. State*, 982 S.W.2d 386 (Tex.Crim.App. 1998). However, that case involved trial court error in sustaining the State's challenge based upon a provision of the Code of Criminal Procedure. Because the error was premised on misapplication of

8

a statute, the court characterized it as non-constitutional error. *Id.* at 391. It went on to hold that as long as the members of the resulting jury are impartial and otherwise qualified, the exclusion of another qualified panel member did not affect a substantial right of the defendant. *Id.* at 393-94.

In this case, unlike *Jones*, the asserted error does not involve the mere violation of a statute, but goes to appellant's right to a fair and impartial jury and the effective assistance of counsel. Because counsel was not able to inquire into the venire's potential bias on matters relevant to the case, we cannot know if the members of the selected jury were impartial. Indeed, in the recent decision of *Gonzales v. State*, No. 06-97-0121-CR (Tex.App.--Texarkana Aug. 31, 1999, no pet. h.), our sister court considered the effect of the denial of proper *voir dire* questions. It observed:

> When an error occurs in the questioning that resulted in the selection of the jury, there is a probability that the error will skew every act taken by counsel in connection with the denied questions because counsel has been improperly denied the right to have any insight into the juror's reaction to that area.

Because it felt it was impossible to determine how the denial of proper questions affected trial counsel's ability to select an impartial jury and his presentation of his case, the *Gonzales* court held the error was of constitutional dimension and was not harmless.

Rule 44.2(a) does not permit us to find an error harmless based upon our speculation or conjecture. There is nothing in this record to support a conclusion that, beyond a reasonable doubt, the limitation on appellant's ability to question the jury did not contribute to his conviction or sentence. That being true, we sustain appellant's first point. Because that action requires the reversal

9

of the judgment of the trial court and the remand of the cause for retrial, it is not necessary to discuss the remainder of appellant's points.

Accordingly, the judgment of the trial court is reversed and the cause remanded for retrial.

John T. Boyd
Chief Justice

Do not publish.